[No. B013479. Second Dist., Div. Seven. Sept. 26, 1986.]

WINICK CORPORATION, Plaintiff and Appellant, v.
COUNTY SANITATION DISTRICT NO. 2 OF LOS ANGELES
COUNTY, Defendant and Respondent.

COUNSEL

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, Hall R. Marston, Robert M. Dato, Jose H. Garcia, Golde, Higer, Silver & Wagner, Golde & Higer and David J. Golde for Plaintiff and Appellant.

Knapp, Marsh, Jones & Doran and Jeffrey R. Graves for Defendant and Respondent.

---

## OPINION

ADLER, J.*—Respondent and defendant, County Sanitation District No. 2 of Los Angeles County (District) was granted summary judgment (Code Civ. Proc., § 437c) against plaintiff and appellant Winick Corporation (Winick) on the ground that plaintiff's complaint presented no triable issues of fact and had no merit. This appeal is from that portion of the summary judgment which granted the District's request for sanctions against Winick in the form of attorney's fees pursuant to Code of Civil Procedure sections 128.5 and 437c, subdivision (i).[1] We affirm.

### FACTS

The District is a public agency organized and operating pursuant to Health and Safety Code section 4700 et seq. The underlying litigation involves the District entering into a construction contract for "effluent filters" with Hydro-Mechanical Co. (Hydro) for work at its San Jose Creek Plant. Hydro obtained a performance bond for materialmen and laborers from Safeco Insurance Company of America (Safeco). Hydro entered into a subcontract with Winick for labor and materials for the electrical portion of the project.

On October 26, 1979, Winick filed a stop notice on the District pursuant to Civil Code section 3179. The stop notice claimed $175,000 was owed by Hydro and asked that sufficient funds be withheld from Hydro to satisfy the claim. Although Winick had properly served the stop notice, it was directed to "County Sanitation Districts," a misnomer. The District had

---

*Assigned by the Chairperson of the Judicial Council.

[1]As of 1984 Code of Civil Procedure section 128.5 provided: "(a) Every trial court shall have the power to order a party or the party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith. [Par.] (b) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

Section 437c, subdivision (i) concerns summary judgments and provides: "If the court determines at any time that any of the affidavits are presented in bad faith or solely for purposes of delay, the court shall order the party presenting such affidavits to pay the other party the amount of the reasonable expenses which the filing of the affidavits caused such other party to incur."

already received six other stop notices and an abstract of judgment from other creditors of Hydro's, and the amount of their claims exceeded the contract balance payable to Hydro. The District acting under Civil Code section 3186 withheld all funds due Hydro.

On January 7, 1981, Hydro served the District with two releases of stop notices and four stop notice release bonds. One of these bonds covered Winick's stop notice. The surety was the General Insurance Company of America. The bond also refers to the respondent, obligee on the bond, as "County of Los Angeles Sanitation Districts," a misnomer. However, following receipt of these release bonds, the District continued to withhold Hydro's funds, due to remaining claims unrelated to the stop notice—a judgment creditor, the Internal Revenue Service and Safeco. After the District filed its notice of completion of March 13, 1981, the District filed an interpleader action to resolve these remaining claims.

On May 14, 1981, Winick filed its action against Hydro, Safeco and the District to recover amounts owed by Hydro. On May 21, 1981, Jeffrey R. Graves, attorney for the District, sent a letter to William D. Eisner, Winick's first attorney, informing him that the District had accepted a stop notice release bond from Hydro. The letter further explained that pursuant to Civil Code section 3196 and *Cal-Pacific Materials Co.* v. *Redondo Beach School Dist.* (1979) 94 Cal.App.3d 652 [156 Cal.Rptr. 590], Winick's sole remedy was against the release bond written by General Insurance Company of America.

Mr. Graves then received a letter from Mr. Eisner which stated that he had sent the information to his client for a decision regarding the District's dismissal.

On June 9, 1981, instead of dismissal, the District was given an open extension of time to answer or otherwise plead.

The case remained dormant for the next year, until Mr. Graves contacted Mr. Eisner, and was advised that Lipofsky & Lande was Winick's new attorney. On January 19, 1983, Mr. Graves sent Judy Meyer of Lipofsky & Lande copies of the stop notice release bond, and explained that Winick's sole remedy was against the release bond. Again, the case remained dormant for over one year, until May 22, 1984, when Mr. Graves was informed that the open extension was revoked, and the District would have to appear. Once again, Mr. Graves explained to Ms. Meyer that Winick had no cause of action against the District, and asked for dismissal. Ms. Meyer merely indicated that Lipofsky & Lande was in the process of substituting out, and that she wanted the case at issue when that occurred.

On June 1, 1984, Mr. Graves sent Ms. Meyer a letter confirming an extension of time to appear. The letter set forth in detail the facts and law compelling dismissal, and a warning that a motion for summary judgment would follow with possible sanctions against Winick and its counsel.

The District filed its answer on June 18, 1984, and Ms. Meyer moved to withdraw as Winick's counsel the next day.

On October 23, 1984, Mr. Graves once again assumed the initiative by contacting Mr. David Golde, Winick's recently substituted counsel. For the fifth time, Mr. Graves requested that the District be dismissed, and once again Winick's attorney requested additional time to review the request.

Having received no response, on December 6, 1984, the District filed its motion for summary judgment and for award of attorney's fees and expenses. Mr. Golde then wrote to Mr. Graves, and conceded that no cause of action exists against a public entity when funds are released pursuant to a stop notice release bond. However, Golde explained that no dismissal would be forthcoming, until the misnomer on the bond was corrected to reflect the true name of the District. Winick then formally opposed the motion for summary judgment on two grounds: (1) The misnomer of the District on the bond, and (2) the funds owing to Hydro had not been released to Hydro after the bond was accepted.

The court granted the motion for summary judgment, and found the issues raised by Winick had "no merit," that "Winick's tactics and actions were not based on good faith, were frivolous, and caused unnecessary delay." The court ordered Winick to pay $4,343 in attorney's fees for drafting the answer and motion for summary judgment. The court's order set forth in detail the conduct and circumstances justifying the sanctions.

Winick does not appeal the order granting summary judgment and dismissal of the District from the suit, but only the court's order imposing sanctions.

### STANDARD FOR REVIEW

Appellant urges this court to apply an improper standard of review. Appellant argues, without citation of any authority, that the proper standard of appellate review requires this court to consider the record on appeal to determine if appellant's conduct meets the standards of frivolousness. The logical result of applying this standard would cause an appellate court to use its own independent judgment in deciding whether trial court sanctions should be imposed.

Appellant's argument is totally without merit. ■ On appeal, a judgment or order of the trial court is presumed correct, and all presumptions are indulged in to support it. (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, pp. 276-277.) ■ Where the trial court is vested with discretionary powers, the test is abuse of discretion. (*Brown* v. *Newby* (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) The test on appeal is whether the trial court has abused the broad discretion to justify our interference with a sanction award. (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist.* (1983) 140 Cal.App.3d 111, 117 [189 Cal.Rptr. 208]; *Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668 [213 Cal.Rptr. 654].)

Where the issue on appeal is whether the trial court has abused its discretion, the showing necessary to reverse the trial court is insufficient if it presents facts which merely afford an opportunity for a different opinion: "*An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.* To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice; . . ." (*Brown* v. *Newby, supra,* 39 Cal.App.2d at p. 618; italics added.)

## THE SANCTIONS

Recent statutory changes have broadened the power of trial courts to award sanctions, including attorney's fees for "tactics or actions not based on good faith which are frivolous or which cause unnecessary delay." (Code Civ. Proc., § 128.5.) More specifically, such sanctions can be applied in summary judgment proceedings where a party files an affidavit in bad faith. (Code Civ. Proc., § 437c, subd. (i).)

■ Trial courts are empowered to supervise the orderly conduct of the court's business and to guard against inept or unnecessary procedures which tend to delay or hinder its proceedings. (*People* v. *Mattson* (1959) 51 Cal.2d 777, 792 [336 P.2d 937]; *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 648-649 [192 Cal.Rptr. 57].) ■ An attorney has an obligation to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 647 [183 Cal.Rptr. 508, 646 P.2d 179].) While the fervor of zealous counsel should not be deterred, we must recognize the real fear that irresponsible litigants may abuse their right of access to the judicial system. (*Id.,* at pp. 648, 651; *Ellis* v. *Roshei Corp., supra,* 143 Cal.App.3d 642, 649.) ■ Here, the sanction of imposing attorney's fees is the sole means the District may be protected from bad faith litigation, since governmental

entities may not bring malicious prosecution actions. (*City of Long Beach v. Bozek* (1983) 33 Cal.3d 727 [190 Cal.Rptr. 918, 661 P.2d 1072], adopting the opn. at (1982) 31 Cal.3d 527, 537-538 [183 Cal.Rptr. 86, 645 P.2d 137]; *Curtis* v. *County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1247 [218 Cal.Rptr. 772].)

■ A trial court must find several elements to hold an action frivolous or in bad faith: (1) The action must be determined to be without merit; (2) the action is prosecuted for an improper motive, including harassment or delay; or (3) the action indisputably has no merit, where any reasonable attorney would agree that the action is totally and completely without merit. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist., supra,* 140 Cal.App.3d 111, 116.)

■ In applying this test the Supreme Court has established several policy guidelines: (a) an action that is simply without merit is not by itself sufficient to incur sanctions; (b) an action involving issues that are arguably correct, but extremely unlikely to prevail should not incur sanctions; and (c) sanctions should be used sparingly in the clearest of cases to deter the most egregious conduct. (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 650-651.)

■ Here, the court has used its discretion to award attorney's fees to the District, because Winick failed to voluntarily dismiss this action, and caused the District to file its answer and move for summary judgment. The trial court made its findings which closely follow the wording of *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist., supra,* 140 Cal.App.3d 111, 116: "[Winick's] tactics [or] actions [were] not based on good faith . . . were frivolous; [or] caused unnecessary delay in that Winick knew, or should have known, that the facts and law precluded the action or any recovery against the District, yet prosecuted the action against the District in any event, and opposed its motion for summary judgment." The trial court's findings are clearly sufficient. However, in determining whether the trial court abused its discretion, the initial test of *In re Marriage of Flaherty* requires that the action be without merit. To determine this issue, we must look to the underlying principles of mechanic's liens.

Winick as a subcontractor of labor and materials to a public entity, was subject to a detailed statutory scheme codified in section 3179 et seq. of the Civil Code. Upon service of a stop notice, the public entity must withhold sufficient funds from the original contractor to satisfy the claim. (Civ. Code, § 3186.) The public entity in its discretion may permit the original contractor to file a bond for payment of the claim, and "[u]pon the filing of such bond

with the public entity, the public entity shall not withhold any money . . . from the original contractor on account of the stop notice. The surety or sureties upon such bond shall be jointly and severally liable to the stop notice claimant . . . ." (Civ. Code, § 3196.) After posting the bond the remedies of the claimant rest solely on the bond, because the statutory structure does not impose liability on the public entity. (*Cal-Pacific Materials Co. v. Redondo Beach City School Dist.* (1979) 94 Cal.App.3d 652, 656 [156 Cal.Rptr. 590].)

Here, there can be no question that the trial court correctly granted the District's motion for summary judgment. After accepting the stop notice appeal bond, the District discharged its statutory duty, and Winick had no right of action against it. Appellant does not appeal this decision of the trial court, but argues that it opposed the summary judgment in good faith.

Appellant argues several meritorious issues were raised in the trial court that may have invalidated the release bond: (1) that no funds were actually released to Hydro after the release bond had been accepted, and (2) the use of a misnomer for the District as obligee.

Appellant argues that the statutory procedure which discharges the District's liability does not arise until the funds are actually released. A simple review of Civil Code section 3196 clearly dispels this erroneous view: "Upon the filing of such [release] bond with the public entity, the public entity shall not withhold any money . . . from the original contractor *on account of the stop notice.*" (Italics added.) Nowhere does the statutory procedure require funds actually be released. Once the bond has been accepted, the public entity has no further duty to withhold funds on account of the specific bonded stop notices. (*Cal-Pacific Materials Co. v. Redondo Beach City School Dist., supra,* 94 Cal.App.3d 652.) This procedure permits a public entity served with multiple stop notice claims, to choose which claims it will bond and which to withhold funds to protect remaining claimants. Claimants whose stop notices are bonded no longer look to the withheld contract balance to satisfy payment of its claims, but look to the surety on the bond.

Here, the District was faced with such multiple stop notice claims, as well as other claimants. The District properly accepted stop notice release bonds to satisfy claimants filing stop notices, but continued to withhold funds and filed an interpleader action as to the other claimants. These claimants included an abstract of judgment served by Hydro's judgment creditor pursuant to Code of Civil Procedure section 710a (repealed in 1982, recodified in § 708.760, subd. (a)), a notice of levy from the Internal Revenue Service pursuant to 26 United States Code section 6331, and a

claim from Safeco. Civil Code section 3196 relieves the District from its obligation to withhold funds pursuant to Winick's stop notice, however, it was still required by other statutes to withhold funds to cover remaining claimants.

Next, appellant argues the misnomer regarding the District as obligee may defeat the bond. California law regarding misnomers or ambiguities in the names of parties and descriptions in surety agreements is well established. Contracts of suretyship are to be interpreted in the same manner as other contracts. (Civ. Code, § 2837.) ■ These agreements must be interpreted to render them operative and effective. (*White* v. *Indemnity Ins. Co.* (1966) 246 Cal.App.2d 160, 162 [54 Cal.Rptr. 530].)

■ As a general rule, where an ambiguity exists as to a description or the identity of obligee, the bond is not invalid, but the court may use extrinsic evidence to resolve uncertainty and identify parties. (*Mazuran* v. *Finn* (1921) 53 Cal.App. 656, 660 [200 P. 769].) These principles are among the oldest and firmly established in California law. We can go back little further than *Morgan* v. *Thrift* (1852) 2 Cal. 562, 563, where the Supreme Court held that a misnomer in the name of an obligee did not invalidate the bond. (Cited with authority in *Mazuran* v. *Finn, supra,* 53 Cal.App. at p. 660.) In *Clay* v. *Superior Court* (1916) 32 Cal.App. 189, 193 [162 P. 416], it was held that surety agreements are not rendered insufficient by a slight variance in the name of the surety. Furthermore, the following misnomers were held not to invalidate agreements or contracts; in *Sixth District etc. Assoc.* v. *Wright* (1908) 154 Cal. 119, 123-127 [97 P. 144], a deed to "Agricultural District Number Six" passed title to "'Agricultural Association.'" In *Budd* v. *Joseph Zukin Blouses, Inc.* (1928) 90 Cal.App. 447, 448-449 [265 P. 1038], an assignment by "'S. & B. Knitting Co.'" sufficiently identified "'S. & B. Knitting *Mills,* Inc.'"; and in *Borello* v. *Eichler Homes, Inc.* (1963) 221 Cal.App.2d 487, 492-493 [34 Cal.Rptr. 648], a lien describing property as "'Unit 3 and Unit 4, Terra Linda, San Rafael, California'" was a sufficient description of "'Terra Linda *Valley* Unit 3 and Unit 4.'"

Applying these principles of interpretation to the facts here, we find the trial court properly determined that "County of Los Angeles Sanitation Districts," was a sufficient description of respondent "County Sanitation District Number 2 of Los Angeles County." In any event, all ambiguities disappear when the release bond is viewed in its entirety. The bond contains the following specific provisions: (1) Hydro is named as principal; (2) the reference to a contract with the District for "effluent filters at San Jose Creek"; (3) a stop notice filed by Winick; and (4) Winick's stop notice claiming $175,000. There is no doubt this release bond identifies respondent.

It should be noted that Winick's stop notice, which initiated the series of events leading to this action, was directed to "County Sanitation Districts." It is disingenuous of Winick to assert a possible bond defect due to a misnomer, yet at the same time maintain the continued validity of its stop notice, which contains a virtually identical misnomer. If the bond is defective for failure to identify the District, then by the same reasoning the stop notice is equally defective, and Winick's action must fail.

Based on the above principles, we find that the trial court acted within its discretion by finding that the issues raised by appellant had no merit. We now proceed to discuss the second part of the test from *In re Marriage of Flaherty* that the action was prosecuted for an improper motive or the action undisputedly has no merit.

Here, the facts show that at an early stage of the proceedings Winick was apprised of the facts and law that clearly indicate the District has no liability. That despite this knowledge, Winick and its attorneys ignored their own case for over three years, conducted no discovery, or acquired any new facts or law during the three-year hiatus. During this entire period, Winick ignored repeated requests to share its reasons for not voluntarily dismissing this action. It was only after the District brought a motion for summary judgment three and one-half years after Winick had served it with the complaint, that Winick finally disclosed its legal objections to dismissal.

Furthermore, the trial record shows that Winick waited over three years to bring an action against the proper party—the General Insurance Company—on the release bond.[2] Winick fails to give any explanation why it continually pursued its rights against the District, which has no liability by statute, and yet totally ignored the remedy provided by statute under the release bond. Like the trial court we find this "tactic" totally inexplicable.

It should also be noted that Winick's opposition filed with the trial court contained no points and authorities in support of the single issue of material fact raised—lack of disbursement of funds to Hydro. Such absence of points and authorities may be construed by the court as an admission that the opposition is not meritorious. (Cal. Rules of Court, rule 313.)

In opposing summary judgment Winick's counsel raised his suspicions concerning anticipated bond defenses: "Since becoming attorney of record for plaintiff on August 16, 1984, I have experienced the length to which Safeco Insurance Company has gone to avoid liability in this case by reliance

---

[2]This delay raises obvious problems with the statute of limitations. (Civ. Code, § 3210; Code Civ. Proc., §§ 337, 338, subd. (1).)

on technical errors. General Insurance Company is affiliated with Safeco as appears on the bond . . . ." However, counsel's declaration and arguments contain no discussions whatsoever of these "technical errors." In *Ellis* v. *Roshei Corp., supra*, 143 Cal.App.3d 642, counsel failed to accept a stipulation to the sole issue raised by his demurrer and forced the court to conduct an unneeded hearing. On inquiry into why he refused the stipulation, counsel replied he was suspicious of defendants. The court held counsel's response "is simply an unacceptable reason for proceeding with the demurrer." (*Id.*, at p. 649.) Here, appellant's unfounded suspicions, innuendos, and speculation as to the defenses and motives of other parties also presents the same type of unacceptable response.

Furthermore, Winick argued not that the District's motion should be denied, only that the court should delay its ruling until the court determines the validity of the release bond. Appellant overlooks the fact that the requested delay was its own making. Had Winick properly brought suit under the release bond when first informed of its existence, the issues could have been decided three and one-half years earlier without the necessity of District's answer or summary judgment. In any event, the District had properly informed Winick of the facts and law, and did everything it could to extricate itself from the litigation without incurring costs.

Based on the foregoing, the trial court's findings that Winick's tactics and actions were not based on good faith, were frivolous, and caused unnecessary delay, and that Winick prosecuted this action knowing the facts and law precluded recovery are amply supported by the record. We find no abuse of discretion in imposing sanctions.

### SANCTIONS ON APPEAL

Respondent asks us to invoke our discretion by sanctioning appellant's attorneys for prosecuting a frivolous appeal.[3] (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) ▮▮▮ However, the imposition of additional sanctions on appeal involves different issues than those posed to the trial court. The issue before the trial court was whether appellant's tactics and actions in requiring respondent to answer and move for summary judgment were sufficient to justify the imposition of sanctions. On appeal, the issues concern whether the trial court abused its discretion in imposing sanctions. In order to impose additional sanctions for prosecuting a frivolous appeal, this court must use its own discretion and judgment to decide whether the

---

[3]At oral argument respondent modified its request, and asked that sanctions be considered against Winick only. However, the test for imposition of sanctions does not turn on whether the attorney or the client is the subject of the sanction.

appeal of these issues meet the standards and guidelines of frivolous conduct established by *In re Marriage of Flaherty, supra,* 31 Cal.3d at pages 650-651.

In exercising our discretion we are mindful of the Supreme Court's admonition: "Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. . . ." (*Id.,* at p. 650.)

As previously discussed, we have affirmed the trial court's finding that appellant's issues were meritless. However, this finding does not automatically require that we find this appeal to be frivolous. Affirmance of sanctions does not itself justify further sanctions. (*M. E. Gray Co.* v. *Gray* (1985) 163 Cal.App.3d 1025, 1040 [210 Cal.Rptr. 285].)

If lack of merit were the only test for imposing sanctions on appeal, we would then be empowered to impose sanctions on virtually all appeals affirming a trial court's imposition of sanctions. Such a mechanical application of sanctions would certainly have a "serious chilling effect on the assertion of litigants' rights," and clearly violate the guidelines of *In re Marriage of Flaherty, supra,* 31 Cal.3d 650-651. The statutes imposing sanctions on appeal "must be read as requiring an inquiry into the motive of an appellant for prosecuting his appeal. . . ." (*Hersch* v. *Citizens Savings & Loan Assn.* (1983) 146 Cal.App.3d 1002, 1012 [194 Cal.Rptr. 628].) Therefore, based on the facts and circumstances of this case, imposition of further sanctions depends on whether we find that this appeal is prosecuted for an improper motive.

Appellant's motives for prosecuting this appeal are unclear. It cannot be seriously argued that appellant's motivation is to delay the District's dismissal from this action, since appellant has not appealed that portion of the trial court's judgment. Even respondent does not argue that delay is appellant's motivation.

Respondent seeks to establish appellant's motive by examining litigation with respect to other defendants.[4] Respondent contends that Winick's te-

---

[4]Respondent requests us to take judicial notice of two pending appeals concerning Safeco and General Insurance Company in order to show that appellant did not perfect its rights as to these parties. (Evid. Code, §§ 452, subds. (a), (b), (d), 453, 459.) However, the trial court record contains specific reference to the case against General Insurance Company and inferences to the statute of limitations, rendering it unnecessary to take judicial notice of that proceeding. (*Ante,* fn. 2.) As to Safeco, the court will take judicial notice of Winick v. Safeco Insurance Co. of America (B102999), clerk's transcript pages 365-366, wherein the trial court dismissed Safeco from the action for failure to serve and return the summons within three years. This notice is necessary to fully present the issues in this appeal, and appellant has not opposed respondent's requests, and appellant admits these facts in its reply brief.

nacity to litigate against the District, was motivated by the fact that Winick's attorneys have failed to perfect their client's rights against either surety, and therefore this appeal is being taken to "minimize the damage that their own negligence has cost their client." Even if this be the case, it does not establish a frivolous motive. Attempting to minimize damage to clients is not improper, and it is the well recognized goal of every motion for reconsideration, relief from judgments or orders taken by mistake (Code Civ. Proc., § 473), or appeal to higher courts. The failure to seek redress from one defendant, while pursuing another, may raise the issue of malpractice, but such conduct by itself does not show an improper motive.

In summary, Winick's counsel have not served their client wisely by pursuing this litigation against the District. Counsel have failed to prosecute proper parties, taken the time of the court and opposing counsel on meritless issues, and attempted to reargue these issues on appeal. However, appellant's conduct reminds us of *Simon* v. *Bemis Bros. Bag Co.* (1955) 131 Cal.App.2d 378, 382 [280 P.2d 528], where the court in declining to impose sanctions found: "To the impartial mind it is clear that appellant's counsel, after nursing the facts of his case for three years could believe in it so fervently that he might convince a reviewing court of the injustice he erroneously felt had been done his client."

Here, Winick and its attorneys have nursed this case for five years. Their views on the issues are questionable and lack support in the record, but they do not seem to be held for an improper purpose.

Motion to impose sanctions for a frivolous appeal is denied.

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.