[No. A033766. First Dist., Div. Four. July 14, 1987.]

ABBETT ELECTRIC CORPORATION, Plaintiff and Respondent, v. ROBERT T. SULLWOLD et al., Defendants and Appellants.

COUNSEL

Jerome B. Falk, Jr., Marla J. Miller and Howard, Rice, Nemerovski, Canady, Robertson & Falk for Defendants and Appellants.

Peter J. Zouras and Raymond H. Levy for Plaintiff and Respondent.

OPINION

**SABRAW, J.**—Robert Sullwold (hereafter Sullwold) and his employer Orrick, Herrington & Sutcliffe (OHS) appeal from an order under Code of Civil Procedure section 128.5 directing them to pay legal expenses incurred by plaintiff Abbett Electric Corporation (AEC).[1] The order was entered after the court declared a mistrial based on references in the jury's presence to the alleged drinking of one of AEC's employees. We reverse.

## I. FACTS

AEC brought this action to recover for electrical contracting services it performed on a building project in San Francisco. The owner, defendant

---

[1] The order is appealable (*I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 331 [220 Cal.Rptr. 103, 708 P.2d 682].)

Storek & Storek Environmental Center (hereafter Storek) was represented by appellants Sullwold and OHS. Storek cross-complained, alleging that AEC failed to perform in a timely manner and in some respects failed to perform at all.

On the 11th day of trial before a jury, Sullwold, as counsel for Storek, was cross-examining AEC's president, J. Conrad Abbett. Abbett testified that AEC's foreman, Jim Berg, had been late to work on the project more than once. Abbett was asked the reasons for Berg's tardiness and testified that he understood Berg had just been divorced and "was upset about it and so forth." Sullwold asked if Abbett knew any other reason. Abbett replied, "I can't say." With no substantive objection having yet been asserted, Sullwold asked, "Did you ever find out one of the reasons that Mr. Berg was late for work is that in his off-hours he perhaps drank a bit more than normal?" Opposing counsel then objected, in open court, on the ground that Berg's off-duty conduct was irrelevant. The following colloquy then took place in the jury's presence: "MR. SULLWOLD: YOUR Honor, . . . I have already established the man was late for work. Now, I am asking him why. I think I will—I intend to go ahead and show that Mr. Berg showing up late in Mr. Abbett's own opinion, affected his progress of the job. [¶] THE COURT: WHAT is the significance of the reason why he was late for work? If he was late for work and it held up the job, so be it. What is the significance of the reason? [¶] MR. SULLWOLD: WELL, I think the reason is—the significance of it is this: Your Honor, if a man is late for work because he has been all night drinking, he is probably less effective a worker than if he was late because the Muni didn't get him to the job on time. [¶] THE COURT: ARE you prepared to prove that he was out all night drinking? [¶] MR. SULLWOLD: YES, I am, Your Honor."

The jury was then excused for the day. On the following morning AEC moved for a mistrial and an award of sanctions. Sullwold conceded that he could not prove the literal truth of the statement that Mr. Berg was drinking "all night," and apologized for saying that he could. The court, however, granted a mistrial, apparently concluding that the jury's objectivity had been irreparably damaged.[2] A ruling on sanctions was postponed to permit briefing.

In opposition to sanctions, Sullwold filed his own declaration in which he declared, among other things, as follows: "I learned from Don Stoddard, Storek's job superintendent, that on more than one occasion he had found Abbett's foreman, Jim Berg, 'passed out'—Mr. Stoddard's words—in his

---

[2] We are not called upon to review the order declaring a mistrial. (See *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [586 P.2d 942].)

truck when Mr. Stoddard arrived at the jobsite to begin the day's work. Mr. Stoddard told me that when Mr. Berg awakened, sometimes as late as 10:00 or 11:00 a.m., he told Mr. Stoddard that he had gone out the night before and 'gotten drunk'—Mr. Stoddard's recollection of Mr. Berg's words. Specifically, Mr. Stoddard recalled an occasion on which Mr. Berg told him that he had 'gotten drunk,' 'gotten into a fight' with his girlfriend and then returned to the jobsite and 'passed out.' Mr. Stoddard also told me that during one period he found Mr. Berg 'passed out' a 'couple of times' a week . . . ."[3]

Sullwold also pointed to the deposition testimony of Abbett, who had stated that he "presumed" Berg occasionally showed up for work with a hangover; that there was a period when Berg was regularly late to work, a problem which Abbett discussed with him as affecting his performance; and that Abbett "might have believed at sometime during the course of the time that [Berg] was on the particular job . . . that drinking might have been a problem that hurt his ability to supervise and complete the project."

The court granted AEC's motion, awarding some $20,000 in expenses. This figure was reached by identifying expenses which would not be beneficial in a retrial, and then reducing that sum by 30 percent for comparative fault based on AEC's failure to make a motion *in limine* concerning Berg's alleged drinking.[4]

## II. ANALYSIS

### A. *The "Not Based on Good Faith" Requirement.*

Code of Civil Procedure section 128.5, as worded at the time of the events in question, empowered trial courts to assess monetary sanctions only for "tactics or actions not based on good faith which are frivolous or which cause unnecessary delay."[5] A strong argument can be made that this lan-

---

[3] A declaration from Stoddard was also filed, but apparently excluded in whole or part by the court. It was apparently offered merely to confirm Sullwold's own statements about what he knew when he was questioning Abbett. Since those statements were uncontroverted, we need not address the issue whether the Stoddard declaration was dealt with properly.

[4] No issue is presented concerning the applicability of comparative fault issues to an award under section 128.5, and we express no opinion on the subject.

[5] As in effect during 1985, section 128.5 provided in part: "(a) Every trial court shall have the power to order a party or the party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based on good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith . . . . (b) . . . . An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

guage requires *both* a subjective element of bad faith *and* an objective element of frivolousness or unwarranted delay. (See *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922, 935 [219 Cal.Rptr. 562] [lack of merit not enough; court must further determine whether action brought with improper motive]; *Garcia* v. *Sterling* (1985) 176 Cal.App.3d 17, 22-23 [221 Cal.Rptr. 349] [award reversed where reasonable to think issues arguable and no evidence of "subjective bad faith or improper motive"]; *Luke* v. *Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 669 [213 Cal.Rptr. 654] [reversing award based on speculation about what law firm could or should have discovered].) On the other hand, a number of cases have allowed an award without appearing to require a finding of subjective bad faith, sometimes implying that *constructive notice* of impropriety is sufficient ground for an award. (See *In re Marriage of Gumabao* (1984) 150 Cal.App.3d 572, 577 [198 Cal.Rptr. 90]; *Wilhelm* v. *Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1334 [231 Cal.Rptr. 355]; *Winick Corp.* v. *County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1177 [230 Cal.Rptr. 289] [finding that plaintiff knew "or should have known" that facts and law precluded action, declared sufficient].)

There is some inescapable overlap between the notion of an indisputable lack of merit and "subjective" bad faith, in that the presence of the former will support an inference that the latter also exists. (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [183 Cal.Rptr. 508, 646 P.2d 179].)[6] However we need not determine here whether there is a conflict in the cases or, if so, how it should be resolved. ■ The case before us satisfies neither of the tests suggested by the cases, i.e., a lack of subjective good faith or patent, objective meritlessness.

B. *"Subjective" Bad Faith.*

The order under review cannot be reasonably construed as containing a finding that Sullwold lacked subjective good faith. AEC insisted that Sullwold's actions (and his entire conduct of the trial) were calculated to produce a mistrial, but the court made no such finding and even observed during argument that it was "not too concerned" with the other instances of alleged misconduct. Even as described by AEC in its papers below, these instances suggest at most an overzealous or perhaps abrasive attorney; they

---

[6] In *Flaherty* the Supreme Court held that an *appeal* may be sanctionable if it meets either a "subjective" test (improper motive) or an "objective" one (patent and indisputable lack of merit). (31 Cal.3d 637, 649-650; but see *Winick Corp.* v. *County Sanitation District No. 2, supra,* 185 Cal.App.3d 1170, 1182 [suggesting improper purpose required in all cases].) However the statute and rule applied there contained no language comparable to the requirement of section 128.5 that the conduct be both frivolous (or unnecessarily dilatory) *and* "not based on good faith." (Code Civ. Proc., § 907; Cal. Rules of Court, rule 26(a).) Therefore *Flaherty* does not appear to be authority for construing section 128.5 disjunctively.

do not produce the impression of someone bent on sabotaging the trial. In any event these portions of the trial have not been transcribed, and the record before us shows only a desire by Sullwold to avoid a mistrial. Thus when it became clear that the court was displeased, he offered to refrain from any further mention of drinking. When it appeared that a mistrial was imminent, he sought to avoid it by offering to apologize to the jury and requesting an opportunity to brief the issue before the court ruled.

It appears that the court itself accepted the premise that "Sullwold believed in good faith that his questions and statements were relevant and warranted by the evidence."[7] To the extent it made any findings on the subject of good faith, they were that Sullwold is a "competent trial attorney" who "*should have* recognized and anticipated the *risk of error* attendant to pursuing questioning of a witness on what *objectively should have been* considered to be inflammatory, prejudicial, and inadmissible matter"; that "[i]n *proceeding without caution,* he *bore the risk* of the eventual mistrial by *treading on such dangerous ground* before the jury"; and that because of this conduct and Sullwold's admission that he could not prove Berg was literally drinking "all night," his actions were "*irresponsible,* and 'not based on good faith.' " (Italics added.)

This is not a finding of a wrongful state of mind, but of a failure to exercise due care. At most it suggests a form of negligence. No case known to us supports the idea that negligence can, in the context of section 128.5, constitute a subjective lack of good faith. An inquiry into good faith necessarily focuses on the actor's belief as to the propriety of his or her actions, and his or her purposes in taking those actions. (See *In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 649-650.) The trial court did not find, and apparently refused to find, that there was any lack of belief or any improper purpose behind Sullwold's conduct. Accordingly the award of sanctions cannot be sustained on the basis of any "subjective" absence of good faith.

C.   *"Objective" Meritlessness.*

Assuming that an order under section 128.5 may be sustained solely on the grounds of "objective" indicia, the record cannot support such a finding here. Conduct is objectively frivolous only where it can be said that it "indisputably has no merit," such that "any reasonable attorney would

---

[7]The order stated in part: "Defense counsel argues that since Mr. Sullwold believed in good faith that his questions and statements were relevant and warranted by the evidence, his actions cannot be found to be 'not based on good faith.' However, it is not necessary that the actions in question be found to be willful or intentional . . . ." At no time did the court repudiate the factual premise of the first sentence, and the thrust of the second sentence is that this premise is taken as true.

agree" that it is "totally and completely without merit." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) This description does not apply to Sullwold's actions.

The trial court apparently based its order on three acts or omissions by Sullwold: (1) Questioning the witness "on what objectively should have been considered to be inflammatory, prejudicial, and inadmissible matter"; (2) failing to raise the evidentiary issues out of the hearing of the jury; and (3) falsely asserting in the jury's presence that, as the court put it, "Mr. Berg was out all night drinking."

Addressing the first instance of conduct, we cannot conclude—and the trial court did not find—that the question about Berg's alleged drinking was so patently improper that any reasonable attorney would have agreed Sullwold was not entitled to ask it. The question arose in cross-examination and tended to disprove the witness's statement that he could not identify any reason for Berg's tardiness apart from being upset about his divorce. Abbett's deposition testimony could be reasonably understood as an admission that he at least suspected the tardiness was due to drinking during the previous night.[8] ■ The right of cross-examination is fundamental (3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, § 1874, p. 1828) and the questioner is allowed particularly wide latitude where the object is impeachment (*id.,* at § 1887, p. 1842). ■ Moreover, Sullwold identified two other grounds on which the evidence was at least arguably admissible. The first was that it tended to show a breach of AEC's contractual obligations to "furnish the services of a competent and experienced superintendent who [shall] be constantly in attendance throughout the installation work"; to "supervise and direct the [work], using [its] best skill and attention"; and not to employ any "unfit person." The second was that the evidence had some tendency to show that the work performed under these circumstances was in fact substandard.

Neither AEC nor the trial court ever articulated a clear legal ground on which the question asked of Mr. Abbett was patently inadmissible. The 140 pages of transcribed hearings are pervaded with the trial court's own ruminations over the relevance and admissibility of this evidence, including expressions of considerable uncertainty. The court eventually concluded that the evidence, even if relevant, could be excluded under Evidence Code section 352 on the ground that its probative value was outweighed by its

---

[8] The trial court suggested that Abbett's deposition testimony was inadmissible conjecture and hearsay. Whether it was speculative or merely evasive seems a question best entrusted to the trier of fact. It apparently constituted admissions by a party, which are admissible over foundational and hearsay objections. (See 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 641, p. 628; see also Evid. Code, § 1235 [prior inconsistent statements].)

prejudicial effect. However, the court was careful to observe that this analysis would not be binding on retrial and that the parties should "spend at least a full day" on a motion *in limine* to deal with the subject. The trial court's own uncertainty over this issue is conclusive evidence that reasonable attorneys could differ, and that the attempt to introduce the questioned evidence was not objectively frivolous.

The court, however, believed that because of the sensitive nature of the evidence Sullwold was obligated to seek advance permission to offer it. We know of no authority which imposes such an obligation in the civil courts of this state, at least where percipient witnesses are concerned and there is no question of a failure to respond to pretrial discovery propounded by the objecting party. (Cf. Code Civ. Proc., §§ 2037-2037.9 [disclosure of expert witnesses]; 2034 [remedies for failure to make discovery].) The trial court here acknowledged the lack of authority, but nevertheless opined that where evidence is arguably subject to exclusion, the proponent must raise the issue in chambers; and that failure to do so is "reckless" and "bad faith" conduct. The court suggested that such preclearance of evidence is both a common practice and a matter of "common sense." But the only concrete examples given were motions *in limine*—which, of course, are motions brought by the *opponent* of evidence to bar its introduction. (See Cal. Judges' Benchbook—Civil Trials (Cal. Center for Jud. Ed. & Research 1981) §§ 3.12-3.15, pp. 72-74.)

A rule requiring both parties to provide advance summaries of anticipated evidence might be salutary. (See Local Rules, U. S. Dist. Ct., N.D.Cal., rules 235-7(i) [pretrial statement must identify witnesses and give substance of testimony], 235-9 [parties must confer concerning evidentiary objections].) However no such rule, nor any applicable order, was shown to apply at the time of the events in question. (Cf. Cal. Judges' Benchbook—Civil Trials (Cal. Center for Jud. Ed. & Research 1981) § 3.9, pp. 64-65 [suggested evidentiary inquiries to be made by court in pretrial conference].)

The burden is ordinarily on the opposing party to object when the evidence is offered, or to bring a motion *in limine* if it wishes to bar all reference to the evidence. (See 3 Witkin, Cal. Evidence, *supra*, §§ 2010-2012, pp. 1968-1971.) Here the court apparently recognized this rule, noting that "[t]he issue of Mr. Berg's drinking problem surfaced initially during discovery," that the issue of "[AEC's] employees' performance constitut[ed] an important issue in this case," that AEC's attorney "should have anticipated inquiry at trial on the subject of Berg's drinking," and that he "should have filed a motion *in limine,* r sought a protective order to preclude the

admission of such evidence at trial.'"[9] The court proceeded to impose sanctions on the proponent of the evidence, however, finding that AEC's failure operated merely as comparative fault.

Sullwold's failure to seek preclearance of this evidence was not such that "any reasonable attorney would agree" it was improper. An award of sanctions on this basis would, to say the least, run afoul of the rule that sanctions should be used only in "the clearest cases" to deter "the most egregious conduct." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at pp. 650, 651.) The imposition of sanctions seems particularly inappropriate here, where counsel was responding to inquiries by the court and no objection to the open court colloquy was made by opposing counsel. The direction of Sullwold's questions was clear enough. The court obviously had the power to require that further discussion, including any offers of proof, take place out of the jury's hearing. (See Cal. Judges' Benchbook, *supra,* §§ 5.20, 5.22, 5.23, 5.24, pp. 152, 153, 155-156.) Instead the court elected to conduct the discussion before the jury.

There is nothing in Sullwold's statements, in and of themselves, which warrants sanctions. We cannot accept the idea that they were so materially inaccurate as to support the court's charge that they were irresponsible. Evidence that Berg was "passed out" in his vehicle at the jobsite, coupled with his own reported descriptions of the reason, supported an inference that he was drinking so late into the night that he went directly to the jobsite instead of home to bed. Such evidence, linked as it was to failure to start work on time, supported an inference that the alleged conduct was detrimental to the performance of the work covered by the contract. While the expression "all night" may not be literally accurate, it is a substantially accurate statement of what Sullwold might reasonably hope to prove.[10]

We find nothing in counsel's conduct—either the words chosen, or the fact that they were spoken in the presence of the jury—which would justify a conclusion that his conduct was "egregious" or that every reasonable attorney would agree to its impropriety. In the existing state of the law we must be satisfied with the hope that offensive behavior by trial counsel will

---

[9] This point seems particularly compelling considering that Sullwold *did* provide some advance notice that evidence of this kind might be offered. He asserted in the trial brief that according to Abbett, "Berg had a drinking problem that may have affected his work."

[10] The court recognized that the statement was a "figure of speech," much like saying "I was awake all night" after sleeping six of eight hours. Indeed the hyperbolic use of expressions like "all night" in spoken English is so common that even as he complained about it, counsel for AEC provided an unwitting example. While arguing for a mistrial he asserted that he and his client had been thinking about the motion "all morning." Though perhaps conceivable, it is not likely that this statement was literally true, or that it was intended to be so understood, or that it was so understood.

reap its own reward through the impression it creates in minds of jurors and the legal community. Whether or not this is so, the Legislature has not seen fit to impose sanctions for merely causing a mistrial. More is required than was shown here.

The judgment is reversed. Each party will bear its own costs on appeal.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied August 13, 1987, and respondent's petition for review by the Supreme Court was denied September 30, 1987.