Filed 9/4/13  Nu v. Nguyen CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PHUONG TON NU, | |
| Plaintiff and Appellant, | G046839 |
| v. | (Super. Ct. No. 30-2011-00492672) |
| MARK NGUYEN, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, William M. Monroe, Judge.  Order affirmed.  Motion for sanctions on appeal.  Motion denied.

Truong and Associates and Hoa Phu Truong; Phuong Ton Nu, in pro. per., for Plaintiff and Appellant.

Rutan & Tucker and Peter J. Howell for Defendant and Respondent.

\*                 \*                 \*

This appeal illustrates how different standards of review can produce dramatically different outcomes. We have before us two matters:

(1) The appeal from an order of the trial court granting a motion for sanctions pursuant to section 128.7 of the Code of Civil Procedure[1] against appellant Phuong Ton Nu, erstwhile plaintiff in this now-dismissed action. Nu is no longer the plaintiff because she dismissed this action the day before the section 128.7 motion was set to be heard.

(2) The motion on appeal by respondent Mark Nguyen for sanctions for bringing a frivolous appeal.

We affirm the order granting the motion for sanctions, under the combination abuse of discretion and substantial evidence standards which apply to section 128.7 review. Substantial evidence readily supports the trial judge's conclusion Nu did not have evidentiary support for her initial complaint based on entrusting some $70,000 to defendant Mark Nguyen. (See § 128.7, subd. (b)(3).) Nu simply contradicted herself too many times about what the money was for and where it went.

But we will deny the motion for sanctions on appeal, because, looking at the record afresh in the context of the exercise of *our own* discretion, there is enough evidence to indicate Nu might have had good faith questions about the handling of her money. In particular, we note it is undisputed that title to a certain Vietnamese condo was *still* in the name of Nguyen's business associate Chan Vinh Khanh as of 2009, while there is clear evidence that Nu gave Nguyen $70,000 in November 2008, and that money went into the checking account of *Nguyen's* company, Decima Realty. While Nguyen's briefs are by far the more articulate in this appeal, conspicuously missing from Nguyen's papers is a consistent unified theory that explains all the evidence in a way that would mandate a decision in his favor. We therefore deny his request for sanctions.

---

[1] All statutory references in this opinion are to the Code of Civil Procedure.

2

FACTS

On July 20, 2011, Phuong Ton Nu filed a complaint against dentist Mark Nguyen, alleging she had given Nguyen $70,000 to invest in real estate, and Nguyen just took the money and never got back to her. The complaint did not specify any particular real estate to be purchased. As worded, the real estate might have been purchased anywhere in the world.[2]

Attached to the complaint were two exhibits. Exhibit A was a copy of two notes. The first note was dated November 4, 2008, and appears to have been addressed to Khanh from Nguyen: "I, Mark Nguyen, have received 45,000.00 in cash for Decima Realty Assoc. and have deposited into the checking account at Washington Mutual. I am expecting a 25,000.00 wire transfer."

The second note said "I received this $70,000.00 in full from Phong Ton Nu to give to Chanh Vinh Khanh."

Exhibit B was a letter from Nu's attorney Truong dated June 14, 2011 demanding immediate return of the $70,000, with the threat: "If my client prevails, which the facts of this case clearly indicate so, interest rate and related costs will be demanded."

Nu's deposition was taken November 4, 2011. Two preliminary matters must be noted. First of all, Nu needed an interpreter. She had fled Vietnam at time of the fall of Saigon in 1975, had married a Vietnamese doctor, and worked as a medical assistant until 1993, when she retired. Second, the parties are connected by familial ties: Nu knows Nguyen as "Bi." Nguyen was a "nephew in the family" who had been sponsored by Nu's family back when Nguyen was in a refugee camp. And Khanh was a nephew of Nu's late husband.

---

[2] From paragraph 9:
"On or about November 4, 2008, Defendant Mark Nguyen, DDS falsely represented to Plaintiff that he and his partners will purchase real estate for investments, and solicited Plaintiff's funds."

3

According to Nu, Nguyen approached her days before November 4, 2008 for a loan "to invest into real estate." Nu said there were six investors in his group, which included himself and Khanh. Nu said she actually gave Nguyen the $70,000 on November 4, 2008.

As her later testimony at deposition would demonstrate, however, Nu did not understand the difference between a loan and a purchase of an equity interest. On the one hand – as if the deal were a loan – she testified Nguyen "asked me to borrow the money so he could invest" money into his corporation and invest "in buying houses for renting." On the other hand, she expected her money back "plus profits" which would be more consistent with ownership in some sort of real estate trust or partnership.

As to the transfer of the money, Nu's story at her deposition tallied with the November 4, 2008 receipts signed by Nguyen. She said she first gave Nguyen $45,000 in cash, then $25,000 was wire-transferred. She brought the suit when she heard from someone in the family that Nguyen had sold the property. In fact, Nu was later able to show that the $45,000 in cash and $25,000 wire-transferred went into Nguyen's Decima Realty account. And it is a reasonable inference that Decima Realty was the formal vehicle used by Nguyen and his group of investors.

The centerpiece of Nu's deposition was a letter written in Vietnamese by Nu on November 20, 2008. There are two certified English translations of the letter in the record. Since the letter is relatively short, we now reproduce the more readable of the two translations. (As noted above, the "Bi" referred to in the opening clause of the letter refers to Nguyen.)

"Dear Khanh Long,

"I have sent to Bi, daughter of aunt Nam, $70,000 to pay for your house. I am now explaining to you the financial situation of the house in Vietnam.

"The purchase price was 109 bars. I was watching for the price to go down so I can buy gold to pay for it because you told me you would only accept gold.

4

Therefore, when I paid Bi it was $880. How can you calculate based on $1000? Now you take the money, the price is: $880 x 109 = $95,920.

"Therefore, I still owe you: $96,000 - $70,000 = $26,000. Do not charge more because right now I am not making money. Just calculate as such. When the house price goes up, if I sell it, you also have to sign off in order for it to be sold. I will share the profit from it with you fairly. Aunt Ti only gave me $50,000; she made a lot of repairs. As for me, I had to come up with money to repair mine, to be shared separately. I hope you understand me. I know you are very understanding toward me, and not wanting to take too much advantage of me.

"Love to you and your children.

"Phuong."

Confronted with the letter at the deposition, Nu acknowledged she wrote it and admitted the letter indicated that Nguyen had simply been a conduit between Nu and Khanh involving a Vietnamese condo deal. But Nu quickly contradicted herself about the letter. First she said she sent $70,000 to Khanh, but Khanh "didn't receive the money," then she turned around (literally on the same page in the deposition transcript) and claimed the $70,000 was a different $70,000, and the letter only referred to money she was "planning" to give, but had "not given yet."

Testimony earlier in the deposition *about* the letter – before the confrontation with its actual words – went like this: Khanh had made a request for "more money." But Nu "had no more money." The letter was *not* related to the "loan" of $70,000 to Nguyen; rather Khanh had asked for his own loan. Nu's point in writing the letter was she was refusing the loan request from Khanh because she had run out of money.

Earlier in the deposition Nu had also said she owned no real estate in Vietnam, and later on – after being shown the letter – she said the letter merely reflected her desire to put money into the Vietnamese condo prior to obtaining ownership.

5

At the deposition Nu was also confronted with a power of attorney form she signed – again the original was in Vietnamese – the substance of which was that Nu didn't own the Vietnamese property, but was in the process of buying it, and needed to authorize her sister to bargain with Khanh to complete the transaction.

The power of attorney form identified Nu as a "party directly making full payment to buy the apartment No. 95 [address in Ho Chi Minh City] from *Mr. Chau Vinh Khanh, who is the person who legally owns the apartment* legally based on the Certificate of Land Use Right No. H 00216 granted by the People's Committee of District 1." (Italics added.) Then, after identifying Nu's sister, it stated: "By this document, the Authorizer agrees to allow the Authorized Person to have all rights on behalf of and in the name of the authorizer to do the following: [¶] Ms. Diep is entitled to contact Mr. Chau Vinh Khanh directly to require Mr. Khanh to assign the apartment [gives address] to [Nu's sister] in compliance with requirements of the law." At her deposition Nu said the power of attorney was so her sister could buy the condo.

And finally, at the deposition Nu was confronted with the second-page fragment of what was apparently once a two-page letter (the first page was never produced) signed by Nu, dated February 10, *2007*, apparently to Khanh, which ended with the words, "Thank you so much for helping me to buy a satisfying unit." Nu testified the letter related to a house owned by Khanh.

Nu had earlier testified she had no communications with Khanh prior to November 4, 2008.

In the wake of her remarkable deposition, in late December 2011 Nguyen's attorney sent Nu's attorney a proposed motion for sanctions under section 128.7, urging Nu to take the opportunity to withdraw her case. Nu declined, so the motion was filed January 18, 2012, with a hearing date of February 16. The basic thrust of the moving papers was that Nu's deposition had proved she had no evidentiary support for her complaint. (See § 128.7, subd. (b)(3).)

Nu's opposition was filed February 14, just two days before the hearing. The opposition made these factual assertions: (a) Nguyen had *tried* to sell Nu a condo in Vietnam, but the price was too high, and Khanh "then kept her funds when the unit [was] sold to a different buyer"; (b) there was a "continuation of negotiation between" Nu and Khanh "regarding the Vietnam Condo, and ultimately the transaction did not materialize"; and (c) "Defendants [by this time Khanh had also been named as a defendant] did not sell the condo to Plaintiff."

Nu's declaration flatly stated she "entrusted $70,000 to Defendant Mark Nguyen to be remitted to Defendant Chau Vinh Khan" and "ultimately the transaction did not materialize" and "[t]he transaction was then assigned to my sister who purchased the Condo." Indeed, she declared "I did not purchase the Vietnam Condo."

But clearly something had gone on. As alluded to above, included in Nu's opposition papers was one of *Decima Realty's* bank statements on a Washington Mutual checking account, for the period November 30, 2008. That statement clearly shows a $45,000 "customer deposit" on November 4, and $25,000 wire transfer on November 6, 2008.

Nu unilaterally dismissed her suit on February 15, 2012 – one day prior to the hearing on the sanction motion. The hearing was eventually continued to March 27, 2012, when the motion was granted. The court ordered Nu and her attorney to jointly pay $22,292.04 in attorney fees incurred by Nguyen. Nu has timely filed an appeal from the order.[3]

---

[3]    The order is appealable under section 904.1, subdivision (a)(12), making orders imposing sanctions exceeding $5,000 independently appealable. The notice of appeal was easily timely under rule 8.104(a) of the California Rules of Court, since the notice of appeal was filed on April 30, 2012. The same cannot be said for her attorney's appeal from the same order, as we explain in the companion appeal, consolidated G047039 and G047151.

DISCUSSION

The standard of review for an order granting a motion for sanctions under section 128.7 is a combination of the three basic standards of review: de novo, substantial evidence, and abuse of discretion. "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (See *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.)[4]

In our case this boils down to whether substantial evidence supports the idea that Nu had no evidentiary support for her suit. It does. And it is therefore clear the trial court was well within the bounds of its discretion in granting the section 128.7 motion.

The contradictions, vagaries and unanswered questions in this record are inescapable. Did Nu have a deal with Khanh concerning a Vietnamese condo? If she never communicated with him prior to November 2008, what about the February 10, *2007* letter, apparently to Khanh, which ended with the words, "Thank you so much for helping me to buy a satisfying unit"? What was she talking about, if not a Vietnamese condo purchase? But if so, why sue Nguyen when, as her letter showed, $70,000 had long since gone into a Vietnamese condo? And we note in particular Nu makes no attempt to contest the translation of the letter and its (at least in English) clear use of the past tense. And the English translation of the letter admits of only one thought: The $70,000 had *already* gone into the Vietnamese condo deal and Nguyen's only involvement was simply as a conduit between Nu and Khanh.

---

[4]     *Haraguchi* was a review of a motion to recuse a prosecutor, but the court's explication of the basic abuse of discretion standard readily applies to section 128.7 as well.

Abraham Lincoln famously said "No man has a good enough memory to make a successful liar." But even accepting Nu's characterization of herself as merely a hopelessly confused elderly woman the trial judge could easily conclude she had no evidentiary support for her suit against Nguyen. So we affirm the trial judge's award.

But now we turn to Nguyen's motion for appellate sanctions. This is a matter within our own discretion. (E.g., *Winick Corp. v. County Sanitation Dist. No. 2* (1986) 185 Cal.App.3d 1170, 1181-1182 ["In order to impose additional sanctions for prosecuting a frivolous appeal, this court must use its own discretion and judgment to decide whether the appeal of these issues meet the standards and guidelines of frivolous conduct . . . ."].)

We examine sanction requests for frivolous appeals under the standards laid down by our Supreme Court in *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651. We ask whether "no reasonable attorney could have thought it meritorious" or whether it was "prosecuted for an improper motive" *in light of* the policy that disfavors any "chilling" effect created by appellate sanctions and the concomitant rule that appellate sanctions "should be used most sparingly to deter *only the most egregious* conduct." (*Ibid.*, italics added.)

Under the *Flaherty* standard we do not believe appellate sanctions are warranted and exercise our own discretion not to impose them on Nu. The contradictions, vagaries and unanswered questions in the record cut both ways. There are just a few too many unanswered questions inherent in this appellate record for us to say confidently that Nu's case – and by extension her appeal – had no evidentiary support from the beginning.

One big unanswered question is why Khanh, by May 2009, held legal title to the Vietnamese condo *if* Nguyen's whole point on appeal – that Nu's $70,000 had, as of November 2008, already gone to pay for that condo – is correct? If the November 2008 letter was so damning to Nu (because it shows her $70,000 really was put to its

9

intended purpose), then why should she acknowledge *Khanh's* title to the Vietnamese condo in a May 2009 power of attorney and authorize her sister to deal with him concerning that condo?

Then there is the February 2007 letter fragment, which indicates Nu was dealing with Khanh regarding *some* property by then, and the most logical inference is that she was in the *process* of buying the Vietnamese condo from him, possibly as early as February 2007. But if that's true, why didn't she ever receive title? And how can $70,000 sent to Khanh sometime *before* November 2008 to buy a condo in Vietnam (the thrust of Nu's November 20, 2008 letter) be reconciled with $70,000 clearly deposited into Decima Realty's checking account in the two installments of November 4 and 6, 2008?

Most problematic to Nguyen's basic narrative on appeal – that Nu sued him for money that actually went into the Vietnamese condo deal which he had nothing to do with – is this: If Nu was buying a Vietnamese condo on the installment plan, why did her money get funneled through *Nguyen's* realty company, Decima? And the money clearly *was* channeled through Decima, as demonstrated by the bank statement attached to the opposition which showed two deposits of $45,000 and $25,000 exactly correlating to the receipt Nguyen signed which made its way to exhibit A of the complaint. We further note the funneling through Decima also tallies with Nu's statement that when Nguyen approached her for a "loan" he was part of an investment group. That is, maybe the $70,000 *wasn't* really intended for the Vietnamese condo after all.[5]

Nu may have been hopelessly confused about the nature of the transaction, but given this record, *we* are also confused as to exactly what happened. At any rate,

---

5       At oral argument in this court, counsel for Nguyen posited an interpretation in which the money Nu gave to Nguyen somehow became part of *Khanh's* investment in a *California* property, so Nu's dispute was really with Khanh, not Nguyen. But even this scenario does not show Nu's suit to have been wholly without support. It is undisputed that Nu's $70,000 went to *Nguyen's* firm, Decima, and even if the money was substantially lost on a California real estate venture, there has yet to be an explanation why *Nguyen* should not at least have given back Nu's pro rata share of any remainder. After all, Nguyen was part of Decima's California adventure too.

10

there are substantial grounds for concluding Nu in fact did give Nguyen $70,000 for *something* and she never got it back.  We do not have the benefit of a record which would allow us to say that Nguyen was bound to win.  Nguyen's motion for appellate sanctions is denied.

## III.  DISPOSITION

The order granting sanctions of $22,292.04 is affirmed.  The motion on appeal for appellate sanctions is denied.  In the interests of justice each party shall bear its own costs on appeal.


BEDSWORTH, ACTING P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.


11