[No. G000514. Fourth Dist., Div. Three. Apr. 30, 1985.]

WILLIAM F. LUKE, Plaintiff and Respondent, v.
BALDWIN-UNITED CORPORATION, Defendant;
BUCHALTER, NEMER, FIELDS, CHRYSTIE & YOUNGER,
Appellant.

**COUNSEL**

Buchalter, Nemer, Fields, Chrystie & Younger, Leonard D. Venger, Phyllis J. Bersch and Jovina R. Hargis for Defendant and for Appellant.

O'Donnell & Gordon, Jeffrey S. Gordon, Steven F. Pflaum and Jan Norman for Plaintiff and Respondent.

**OPINION**

**WALLIN, J.**—Buchalter, Nemer, Fields, Chrystie and Younger (Attorneys) appeal an order of the superior court imposing $4,501.25 in sanctions jointly against the law firm and its client, Baldwin-United Corporation (Baldwin) for filing a frivolous motion to quash. Baldwin has not appealed the order. The issue presented is whether Attorneys' conduct was so egregious as to justify the imposition of sanctions pursuant to Code of Civil Procedure section 128.5.[1]

Luke filed the underlying action against Baldwin and several of its subsidiaries including National Business Services (National) and Baly, Martin and Fay International, Inc. (BMF) for his wrongful termination as treasurer of BMF. A few months prior to Luke's termination, National sold BMF to two other named defendants, Charles R. Warde and Joseph N. Tate.

---

[1]Section 128.5, subdivision (a) provides in part: "Every trial court shall have the power to order a party or party's attorney, or both, to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of tactics or actions not based in good faith which are frivolous or which cause unnecessary delay. Frivolous actions or delaying tactics include, but are not limited to, making or opposing motions without good faith."

Before answering Luke's complaint, Attorneys interrogated Larry Proctor, a Baldwin director and financial officer in charge of internal audit, about Baldwin's contacts with California and researched the law on personal jurisdiction over a foreign corporation. Thereafter Attorneys filed a motion to quash on behalf of Baldwin asserting California did not have personal jurisdiction over Baldwin. In a declaration attached to the motion to quash, Proctor stated: Baldwin is a Delaware corporation not qualified to do business in California; it does not maintain an office nor does it have any employees in California; it does not own any California real property and does not pay California taxes; and it has not appointed an agent for service of process in California. Additionally, Proctor declared Baldwin was not a party to the employment contract, no Baldwin employees came to California to hire or fire Luke, Baldwin does not do business in California, it has no ownership interest in BMF, and all of its records and employees are located in Ohio.

Attorneys stipulated to a continuance of the hearing on the motion to allow Luke to conduct discovery on the jurisdictional issue. Moreover, Attorneys also arranged for Proctor's deposition to be taken in Las Vegas rather than Cincinnati. Luke served a request for production of documents and a set of interrogatories on Baldwin prior to the taking of Proctor's deposition. Although Baldwin objected to the relevancy of nearly all the requested documents, Luke proceeded with Proctor's scheduled deposition.

During three hours of examination, Proctor disclosed a number of California contacts. He acknowledged he was an officer and/or director of several Baldwin subsidiaries, including National. Conceding his roles were blurred, he admitted he often did not know when he was acting on behalf of Baldwin or on behalf of one of its subsidiaries. He arranged for an audit of BMF and negotiated its sale. He also stated several Baldwin employees, including members of his internal audit staff, were put on payrolls of Baldwin subsidiaries doing business in California. Additionally, Proctor, other auditors, and Baldwin employees made frequent trips to California. On one occasion the board of directors met with its audit committee in Los Angeles.

After a break in the deposition, Attorneys announced the motion to quash would be withdrawn and they would answer the complaint on behalf of Baldwin. Opposition to the motion had not been filed. Shortly thereafter Luke filed his request for sanctions itemizing attorneys' fees and costs at $8,373.75. Although the amount awarded was significantly less than requested, the motion was granted.

■■ In 1981, the Legislature intended to broaden the power of trial courts to impose monetary sanctions for "tactics or actions not based

on good faith which are frivolous or which cause unnecessary delay." (Code Civ. Proc., § 128.5; *Ellis* v. *Roshei Corp.* (1983) 143 Cal.App.3d 642, 648 [192 Cal.Rptr. 57]; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist.* (1983) 140 Cal.App.3d 111, 117 [189 Cal.Rptr. 208].) ▮ Hence, the trial court must abuse the broad discretion accorded it by the Legislature to justify our interference with a sanction award. (*Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist., supra,* at p. 117.)

However, balanced against this legislative directive are important competing interests observed by the California Supreme Court in 1982. In *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179], a $500 award of sanctions against appellant's counsel for bringing a frivolous appeal was reversed. Although section 128.5 was not at issue, the Supreme Court's admonitions are applicable here: "Counsel face the danger of being trapped between their obligation to their clients to diligently pursue any possibly meritorious claim, and their obligation to the judicial system to refrain from prosecuting frivolous claims. '[A]n attorney is often confronted with clashing obligations imposed by our system of justice. An attorney has an obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice.' [Citation omitted.]" (*Id.,* at p. 647.) ▮ Cognizant of "[t]he strong public policy in favor of the peaceful resolution of disputes" (*ibid.*), the court narrowly confined frivolous to include only issues "prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit." (*Id.,* at p. 650.) Even after defining frivolous the court cautioned, ". . . any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights . . ." and therefore "the power to punish attorneys . . . should be used most sparingly to deter only the most egregious conduct." (*Id.,* at pp. 650-651.)

▮ Attorneys contend the filing of the motion to quash falls miserably short of the requisite egregious conduct. They argue the trial court abused its discretion by ignoring applicable guidance from the Courts of Appeal construing section 128.5 and their inability to exonerate themselves because of the attorney-client privilege.

Attorneys have pointed out three cases in which sanctions imposed on attorneys were affirmed on appeal. (*In re Marriage of Gumabao* (1984) 150 Cal.App.3d 572 [198 Cal.Rptr. 90]; *Cosenza* v. *Kramer* (1984) 152 Cal.App.3d 1100 [200 Cal.Rptr. 18]; *Ellis* v. *Roshei Corp., supra,* 143 Cal.App.3d 642 [192 Cal.Rptr. 57].) In each case, the conduct directly attributable to counsel clearly constituted the type of egregious conduct described in *Flaherty.* (See also *M. E. Gray Co.* v. *Gray* (1985) 163

Cal.App.3d 1025 [210 Cal.Rptr. 285] and *Karwasky* v. *Zachay* (1983) 146 Cal.App.3d 679 [194 Cal.Rptr. 292].)

In *Gumabao,* an award of $450 was affirmed against an attorney who, without notifying opposing counsel or the court, failed to appear for trial. The court held since the attorney was aware of a conflict and his inability to appear, the delaying tactic was appropriately sanctioned. (*In re Marriage of Gumabao, supra,* 150 Cal.App.3d at p. 577.) Similarly, the court in *Ellis* affirmed a $250 award of sanctions against an attorney for failing to stipulate to a minor and technical amendment to the complaint obviating the need for a hearing on a demurrer. (*Ellis* v. *Roshei Corp., supra,* 143 Cal.App.3d at pp. 649-650.) Finally, in *Cosenza,* sanctions of $1,500 were imposed on both the attorney and his client for joining "together to misuse the appellate process to delay the payment of a legitimate obligation of $1,450 for over six years and to compel the opposing party to expend legal fees and costs far in excess of the amount sought in the litigation." (*Cosenza* v. *Kramer, supra,* 152 Cal.App.3d at pp. 1102-1103.)

Attorneys' conduct stands in glaring contrast to that sanctioned in these cases. The trial court punished Attorneys because it seemed "inconceivable that an attorney of the avowed experience of defendant's counsel could not or would not have elicited those same facts prior to the filing of the motion to quash . . . . At the very least, counsel had an obligation to pursue those facts further to determine, based on the complex corporate scheme described, if all bases of jurisdiction were negated." Yet the trial court had no way to allocate responsibility between counsel and its client. In all of the cases in which attorneys have been personally sanctioned, their derelections were blatant; they personally misused the judicial system. We agree with Attorneys that in this case the trial court's imposition of sanctions against them was based upon impermissible speculation and conjecture as to facts they *could* have or *should* have discovered.

The rationale employed by the court reversing an award of sanctions against a party in *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist., supra,* 140 Cal.App.3d 111 is more appropriate here. ■ Having acknowledged the legislative intent to expand the trial court's authority to award sanctions, the court wrote, "The Legislature did not intend, however, to chill the valid assertion of a litigant's rights against a public entity or any other defendant. For this reason, it is clear sanctions should not be imposed except in the clearest of cases." (*Id.,* at p. 117.) ■ The culpability of Attorneys, like the plaintiff in *Atchison,* is far from clear. In their opposition to the motion for sanctions Attorneys argued they interviewed their client, researched the law, and in good faith filed the motion to quash. They co-

operated with Luke in scheduling Proctor's deposition and aborted it as soon as they realized the motion lacked merit and before Luke filed any opposition to the motion. Hence, the court's conclusion in *Atchison* disposes of the similar arguments presented by Luke: "Here the trial court's order ignored the unique circumstances facing plaintiff, and the fact that plaintiff took only that action to avoid the bar of limitations while at the same time taking no steps which would require the Port to incur any expense. The award of sanctions under the facts of this case constitutes a manifest abuse of discretion." (*Ibid.*)

Luke, however, strenuously objects to shielding Attorneys behind a naked assertion of the attorney-client privilege. He contends that recognition of the privilege in this context would allow the bar to misuse the judicial process with impunity. He relies on *Custom Craft Carpets Inc.* v. *Miller* (1982) 137 Cal.App.3d 120 [187 Cal.Rptr. 78], noting the affirmation of an award of sanctions in spite of the assertion of the privilege.

Luke fails to appreciate the crucial distinction between this case and *Custom Craft*. In affirming an award of sanctions against the *party only,* the *Custom Craft* court stated, "Without invading the attorney-client privilege, we have no available means of determining whether it was the client or counsel who was responsible for pressing this litigation and imposing on both the trial and appellate courts. [¶] Perhaps the deficiency in the original pleadings and brief indicates that counsel was reluctantly attempting to serve a rapacious client. Perhaps not. [¶] In any event, if the fault lies with counsel the client can obtain relief in another forum. Thus we conclude that the appropriate course of action is to impose the sanctions on the party—Custom Craft—which in the final analysis was the beneficiary of the delay and disruption which this litigation produced." (*Id.*, at p. 123.)

We note that Luke as well as the trial court seemed to attribute Baldwin's conduct to their lawyers. This is an improper basis for the imposition of sanctions against Attorneys. The trial court, like the court in *Custom Craft,* had no way to determine whether Attorneys or Baldwin was to blame for filing the motion without invading the attorney-client privilege. Since we conclude there was insufficient evidence Attorneys initiated the motion for an improper motive, the motion was not utterly without merit when filed, and the privilege prevented Attorneys from exonerating themselves, the trial court abused its discretion by ordering the sanctions against them. The propriety of the award against Baldwin is not before us. On this record we cannot find the egregious conduct necessary to sanction counsel and are hesitant to hamper conscientious representation of their clients.

The order is reversed. Each party is to assume its own costs of appeal.

Trotter, P. J., and Sonenshine, J., concurred.

On May 30, 1985, the opinion was modified to read as printed above.