Filed 8/26/19  Marriage of Sahafzadeh-Taeb & Taeb CA1/1

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of MAJGAN SAHAFZADEH-TAEB and HAMID TAEB. | |
| MAJGAN SAHAFZADEH-TAEB,  Respondent,  v.  HAMID TAEB,  Appellant. | A152178  (Alameda County Super. Ct. No. VF08384008) |

Appellant Hamid Taeb and his attorney Michelle Trigger appeal from a Code of Civil Procedure section 128.5[1] sanctions order, issued after Trigger failed to appear for trial in this dissolution case.  We reverse as to Taeb and affirm as to Trigger.

We publish this opinion to make explicit that no vestige remains of the holdings in *San Diegans for Open Government v. City of San Diego* (2016) 247 Cal.App.4th 1306 (*San Diegans*) concerning the requirements of section 128.5.  Among other things, *San Diegans* held that an objective standard applies when determining whether a party's or an attorney's conduct is sanctionable under section 128.5, as it does under section 128.7. (*Id.* at pp. 1314–1317.)  As we explain, section 128.5 has since been amended to specifically overrule *San Diegans* on this point.[2]

---

[1]  All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[2]  These amendments also abrogated another of *San Diegans'* holdings—that section 128.5 did not incorporate the safe harbor provisions of section 128.7.  (*Nutrition*

1

The law concerning the kind of conduct sanctionable under sections 128.5 and 128.7 has, thus, largely returned to its pre-*San Diegans* state—with a more stringent standard requiring subjective bad faith applicable to section 128.5, and a lesser standard, requiring only objective bad faith, applicable to section 128.7. As we further explain, under this pre-*San Diegans* case law, on which the trial court relied, the conduct of counsel here was sanctionable under section 128.5.

## BACKGROUND

The relevant facts are undisputed. In June and August 2016, respondent filed requests for orders concerning real property jointly owned by the parties. The family law court set the case for a readiness conference on January 30, 2017, in advance of the scheduled trial date, February 7.

Counsel for both parties contacted the court clerk on January 27 (10 days before the scheduled trial date), stated they were ready to proceed to trial, and asked that they be excused from appearing three days later at the readiness conference. In light of the attorneys' representations, the court excused their appearances and ensured that its calendar on February 7 was clear for a day-long trial.

When the court called the matter for trial on February 7, both parties and counsel for respondent were present. Trigger was not. In response to the court's inquiry as to why she was not present, Taeb responded that his lawyer "had another trial in Sacramento for a few days, and it's still going on." Opposing counsel then stated Trigger had notified her office the previous afternoon, stated her Sacramento trial was running longer than expected, and asked opposing counsel to agree to a continuance, which counsel had refused to do, pointing out the requests for orders had been pending for at least six months. Opposing counsel further complained that Trigger had failed to comply with other requirements of the trial setting order, including failing to provide copies of

_____

*Distribution, LLC v. Southern SARMs, Inc.* (2018) 20 Cal.App.5th 117, 126–130 (*Nutrition Distribution*).)

2

exhibits, failing to file a trial brief, and failing to provide an income and expense declaration, and asked that Taeb be barred from presenting any such items at trial.

The clerk then advised the court specially appearing counsel was on his way to formally ask for a continuance, and Taeb, at that point, told the court Trigger had sent him a motion he was to give to the court. The court waited for specially appearing counsel to arrive, which he did shortly.

Counsel forthrightly confirmed he was not ready to proceed with trial, but was there on behalf of Trigger to ask for a "good cause" continuance. When the court asked counsel why Trigger had assured the court on January 27 she was ready to proceed to trial, counsel said he did not know and, in fact, had not read the moving papers. Commenting counsel was not making an effective appearance, the court took a recess, giving him a half hour to read the papers and stating the situation was "highly irregular." The court also observed the situation was "not fair to the petitioner to have to pay her attorney to sit" in the court while specially appearing counsel reviewed the motion and told opposing counsel she could "elect to seek attorney's fees for her client."

Following the recess, specially appearing counsel repeated what was in the moving papers—that Trigger thought her Sacramento trial was going to end by January 26, but her client had unexpectedly exercised his right to testify, resulting in testimony continuing for several additional days. Trigger had also, the prior afternoon, contacted opposing counsel in the instant case, advising her of the continuation of the Sacramento trial.

Opposing counsel responded that by January 27, when Trigger told the court she was ready to proceed to trial, Trigger knew her client had decided to take the stand in the Sacramento case, knew the trial in that case had not concluded by the anticipated date, and knew that trial was going to continue for several more days. Given Trigger's prior failures to comply with court orders, including her failure to comply with the trial setting order, opposing counsel accused Trigger of tactical delay.

The court granted a three-day continuance, stating it expected to see a motion by opposing counsel to exclude the materials Trigger had failed to provide in violation of the

3

pretrial order.  The court further stated, "we've already discussed this Court's expectation that you will consider whether or not you wish to seek attorney's fees on behalf of your client for today's appearance."

On the new trial date, February 10, opposing counsel filed a Form FL-300 "Notice of Hearing" requesting sanctions pursuant to section 128.5.  Respondent sought $3,575 for the attorney fees and costs incurred in needlessly appearing on February 7 and for preparation of the sanctions motion.  Respondent additionally filed a memorandum of points and authorities, and a declaration in support of the sanctions request.

When the case was called, opposing counsel renewed her request that the court exclude all materials Trigger had failed to provide pursuant to the pretrial order.  After Trigger acknowledged she had failed to comply with the order, the court granted the motion to exclude.

At the close of evidence, the court asked counsel how they would like to proceed.  Opposing counsel stated she would be happy to present closing argument through briefs.  Trigger stated she preferred live closing argument, but was happy to provide written argument if the court preferred.  Given the nature of the issues, the court stated it would find written briefs "particularly helpful," and asked counsel how much time they needed.  The court then set a briefing schedule.

At that point, Trigger stated, "the only other matter that I would bring up" is that "petitioner [(respondent on appeal)] has filed an attorney's fees request based on my matter being continued earlier this week."  The court suggested Trigger address this in her closing argument briefing.  Trigger responded, "[t]hat's what I was going to ask . . . for efficiency so that we are not returning again for another court date."  After one additional housekeeping matter not relevant to this appeal, trial concluded.

The trial court issued a proposed statement of decision on April 5, ruling in favor of respondent on the requests for orders.  It also included in its proposed statement its ruling on the motion for sanctions, ordering Taeb to pay $1,575 and Trigger to pay $2,000.

4

Trigger filed objections to several aspects of the proposed statement, including the imposition of $2,000 in sanctions directly against her. Trigger repeated that she had been in trial in a serious criminal case at the time of the readiness conference, and stated opposing counsel "was not only aware of this ongoing trial, but aware there was a possibility it could interfere with the present case" and aware Trigger "would be seeking a continuance the following day." Trigger asserted she had wanted to proceed with trial in the instant case, pointing out the matter had been "continued and delayed before, through no fault or request" on her part. She further recited she had arranged for counsel to specially appear, and claimed she had made a motion to continue "at the first available opportunity," which "contained authority for a good cause continuance" the court "cannot ignore." Trigger maintained "there was no conduct to insinuate—let alone prove—that Ms. Trigger acted in bad faith. She was simply in trial and it went longer than reasonably expected."

Trigger further complained opposing counsel had "arrived the morning of trial with a motion seeking attorney fees." Trigger maintained that since attorney fees "were already at issue" in connection with the dissolution proceedings, opposing counsel should have just "updated" her numbers, instead of incurring even more fees preparing a sanctions motion. Trigger further asserted that rather than seeking any additional fees and expenses, opposing counsel should have extended the "professional courtesy" of acknowledging Trigger was not acting in "bad faith" in seeking the short continuance.

Trigger additionally complained no "evidence" had been taken in connection with the motion for sanctions. Rather, at the conclusion of the trial, the court had asked Trigger to oppose the sanctions motion in her closing argument briefing, which she had agreed to do to avoid an additional hearing and additional fees for both parties. Thus, Trigger asserted no "evidence" had been presented in support of the motion, "[o]nly argument." She likewise maintained the court's proposed statement of decision was devoid of reference to any "evidence" supporting the sanctions order. Trigger claimed the court found only that she had "inconvenience[d]" the court and respondent and this was not tantamount to the "bad faith" conduct required to impose sanctions.

5

Trigger also complained she and her client were not given an opportunity to present evidence, or to confront and cross-examine relevant witnesses. Trigger asserted the sanctions motion "was an afterthought and included in final argument for efficiency" and claimed the court could not impose sanctions "without any meaningful opportunity to be heard, without the review and admission of any relevant evidence, and without any facts" showing bad faith conduct.

Finally, Trigger urged the court, if it was persuaded the sanctions requested were appropriate and reasonable in amount, to either include that amount in the "general attorney fee award" to respondent and Trigger would handle the matter directly with her client, or to set an evidentiary hearing on sanctions.

The court issued its final statement of decision and orders approximately two weeks later. The court devoted several pages to reciting the circumstances that led to the sanctions motion and on which the sanctions were based. The court acknowledged Trigger had been in trial and that her client had unexpectedly decided to testify, causing her Sacramento trial to run longer than Trigger had expected. What the court focused on, however, was that Trigger was fully aware she was running up against the trial date in the instant case and made no effort to seek a continuance. Moreover, she knew by January 26 that her client had unexpectedly exercised his right to testify and knew that the criminal trial was not going to conclude on that date as she had anticipated it would. Yet, the following day, the 27th, she told the court clerk she was ready to proceed to trial as scheduled. She then failed to either advise the court of the conflict or make a motion to continue until the instant case was called for trial 10 days later, on February 7. And even then, she sent a lawyer to specially appear who was not prepared to try the case or even to present Trigger's belated motion for a continuance. As a result of Trigger's conduct, the court had been adversely affected, as it had been too late to reset anything else on the court's calendar for that day, and opposing counsel and her client had needlessly incurred fees and costs in appearing. The trial court awarded $3,575 in sanctions, $2,000 of that amount against Trigger personally.

6

*Statutory History*

"Section 128.5, authorizing sanctions for certain bad faith actions or tactics, was originally enacted in 1981. (Stats. 1981, ch. 762, § 1, p. 2968.) As subsequently amended in 1994, the provision applied only to proceedings initiated on or before December 31, 1994. (Stats. 1994, ch. 1062, § 1, pp. 6395–6396; see *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 810 . . . [(*Olmstead*)].) Concurrently with the creation of the 1994 sunset date for section 128.5, the Legislature adopted section 128.7, which permitted the court to award sanctions for pleadings and motions filed for an improper purpose and applied to complaints or petitions filed on or after January 1, 1995 and to any pleading, motion or similar paper filed in those proceedings. (Stats. 1994, ch. 1062, § 3, pp. 6397–6398; see *Olmstead*, at p. 810.)"[3] (*Nutrition Distribution, supra*, 20 Cal.App.5th at pp. 123–124.)

By 1994, when the Legislature effectively hobbled section 128.5 and enacted section 128.7, the vast majority of courts had concluded section 128.5 "require[d] a showing not only of a meritless or frivolous action or tactic, but also of bad faith in taking the action or tactic." (*Dolan v. Buena Engineers, Inc.* (1994) 24 Cal.App.4th 1500, 1506 (*Dolan*), citing *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1071 (*Summers*) [use of term " 'bad-faith' " reflects legislative intent that courts must find an "action or tactic was being pursued in subjective bad faith before imposing sanctions"] and *Llamas v. Diaz* (1990) 218 Cal.App.3d 1043, 1047 (*Llamas*) [legislative history since statute's enactment in 1981, through 1984 and 1985 amendments, reflects intent that "there must be an assessment of *subjective* bad faith in addition to finding a particular action or tactic was frivolous"].) Nevertheless, some uncertainty remained on this point. (E.g., *Dolan*, at pp. 1507–1509 (conc. opn. of Woods, J.) [rejecting "double requirement"

---

[3] Thus, section 128.7, which remains in effect, is narrower in scope and applies solely to misconduct in the filing or advocacy of groundless claims made in signed pleadings and other papers. (§ 128.7, subd. (b).)

in all cases of both objective frivolousness and subjective bad faith]; see *Summers,* at p. 1072 ["not all appellate courts" agreed subjective bad faith was required]; *Llamas,* at p. 1047 [observing courts were "not in harmony" as to standard].)

In contrast, the law was well-settled under section 128.7 that courts were required to find only that a party's or attorney's conduct was " 'objectively unreasonable.' "[4] (*Guillemin, supra*, 104 Cal.App.4th at p. 167.)

Section 128.5 was "revived in 2014 by Assembly Bill No. 2494 (2013–2014 Reg. Sess.), effective January 1, 2015 (Stats. 2014, ch. 425, § 1)." (*Nutrition Distribution, supra*, 20 Cal.App.5th at p. 124.) As revived, section 128.5 empowered courts to "order a party, the party's attorney or both to pay reasonable expenses, including attorney fees, incurred as a result of bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. ([Former] § 128.5, subd. (a).)" (*Nutrition Distribution,* at p. 124.) The statute also included a new subdivision, former subdivision (f) of section 128.5, which was to remain in effect until August 7, 2017 and provided, " 'Any sanctions imposed pursuant to this section shall be imposed consistently with the standards, conditions, and procedures set forth in subdivisions (c), (d), and (h) of Section 128.7.' " (*Nutrition Distribution,* at p. 124.)

Two years later, *San Diegans* considered the reach of the amended statute and held, among other things, that new subdivision (f) imported into section 128.5 the objective standard applicable under section 128.7. (*San Diegans, supra*, 247 Cal.App.4th at p. 1318 ["Because the Legislature intended that the conditions for sanctions under the

---

[4] Section 128.7 was modeled on rule 11 of the Federal Rules of Civil Procedure, and many of the provisions of the statute and rule are identical. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167 (*Guillemin*).) Accordingly, federal case law construing rule 11 of the Federal Rules of Civil Procedure "is persuasive authority" with regard to the meaning of section 128.7. (*Guillemin*, at p. 167.) Thus, under section 128.7 and rule 11 "there are basically three types of submitted papers that warrant sanctions: factually frivolous (not well grounded in fact); legally frivolous (not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law); and papers interposed for an improper purpose." (*Guillemin*, at p. 167.)

current version of section 128.5 mirror section 128.7, we conclude the objective standard used to evaluate section 128.7 sanctions motions applies to section 128.5."]; see *Nutrition Systems, supra*, 20 Cal.App.5th at p. 125, fn. 7.)[5]

The Legislature responded to *San Diegans* with "urgency legislation enacted August 7, 2017 (Stats. 2017, ch. 169, § 1) . . . 'to clarify the previous legislative intent.' (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended Apr. 20, 2017, p. 1, italics omitted.)" (*Nutrition Systems, supra*, 20 Cal.App.5th at p. 129.) These amendments included resituating the explicit "bad faith" language in subdivision (a), so that the subdivision now provides in pertinent part, "A trial court may order a party, the party's attorney, or both, to pay the reasonable expenses, including attorney's fees, incurred by another party as a result of actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay." (§ 128.5, subd. (a).) The amendments also deleted the language of former subdivision (f) and replaced it with a host of enumerated procedural requirements. (§ 128.5, subd. (f)(1) & (2).)

The Legislative history makes clear the language of section 128.5, subdivision (a) was refined, and the language of subdivision (f) augmented, to eliminate the confusion caused by *San Diegans*, including by "clarif[ying] that the standard applied in Section 128.5 is subjective bad faith." (Assem. Com. on Judiciary, Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended Apr. 20, 2017, p. 1; see *id*. at p. 7 ["[T]his bill makes a technical correction to clarify that sanctions . . . under Section 128.5 must be made in subjective bad faith—like it has always been interpreted. (See *Levy v. Blum* (2001) 92 Cal.App.4th 625, 635 [(*Levy*)]."]; accord Assem. Com., 3d reading of Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended Apr. 20, 2017, p. 3; Sen. Judiciary Com., Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended June 19, 2017, pp. 1, 7 ["Section 128.5 was brought back [in 2014] . . . to give courts the ability to go after bad-

---

[5] As noted, *San Diegans* also held that despite the new language in subdivision (f), the "safe harbor" provisions of section 128.7, did not apply to 128.5. (*Nutrition Systems, supra*, 20 Cal.App.5th at pp. 126–127.)

faith conduct under the old Section 128.5 standard"]; Conc. in Sen. Amends., Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended July 12, 2017, p. 3; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading of Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended July 12, 2017, p. 5.)[6]

In short, with the 2017 amendments, the law as to the meaning of "bad faith" under section 128.5 has returned to the majority view explicated and applied prior to *San Diegans.*

***Subjective Bad Faith***

As we have recounted, the Legislative history cited to *Levy* as illustrative of the subjective bad faith standard applicable under section 128.5. In that case, the appellate court affirmed sizeable sanctions assessed against a party and his lawyer in a probate proceeding. (*Levy, supra*, 92 Cal.App.4th at p. 628.) The trial court found their position as to the intent of the parties in entering a prior settlement " 'wholly incredible and without any merit whatsoever,' " their conduct " 'was taken in total disregard of the clear, unambiguous terms of the in-court settlement agreement,' " their actions " 'were taken in bad faith, that is, without subjective good faith or honest belief in the propriety or reasonableness of such actions,' " and as a result, the opposing party had incurred additional fees and costs. (*Id.* at pp. 633–634.)

Among the issues on appeal was whether the trial court had properly ordered sanctions under section 128.5, rather than under section 128.7. (*Levy, supra*, 92 Cal.App.4th at p. 628.) The appellate court therefore commenced its discussion with an overview of the two statutes. (*Id.* at pp. 635–638.)

As to the standard under section 128.5, the court stated, "A bad faith action or tactic is considered 'frivolous' if it is 'totally and completely without merit' or instituted

---

[6] This legislative history also makes clear the standard under section 128.7 remains an objective one. (E.g., Conc. in Sen. Amends., Assem. Bill No. 984 (2017–2018 Reg. Sess.) as amended July 12, 2017, p. 3 ["[I]t should be noted that this bill does not affect the standard applied to CCP Section 128.7, which is reviewed under an objective reasonableness standard."].)

'for the sole purpose of harassing an opposing party.' ([Former] § 128.5, subd. (b)(2).) Whether an action is frivolous is governed by an objective standard: any reasonable attorney would agree it is totally and completely without merit. [Citations.] There must also be a showing of an improper purpose, i.e., subjective bad faith on the part of the attorney or party to be sanctioned." (*Levy, supra*, 92 Cal.App.4th at p. 635; see, e.g., *Campbell v. Cal-Gard Surety Services, Inc.* (1998) 62 Cal.App.4th 563, 573–574 (*Campbell*) [party seeking section 128.5 sanctions must show action was "meritless or frivolous, *and* that it was pursued in bad faith"].)

The *Levy* court further explained, "[w]hen the Legislature enacted section 128.5, its intent was ' "to broaden the powers of trial courts to manage their calendars and provide for the expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized. . . ." ' [Citation.] Section 128.5 authorizes the award of attorney fees as a sanction to control improper resort to the judicial process. [Citation.] The statute permits the award of attorney fees, not simply as appropriate compensation to the prevailing party, but as a means of controlling burdensome and unnecessary legal tactics. [Citation.] Section 128.5 requires much more than a party acting with 'no good reason' to justify an award of sanctions. There must be a showing not only of a meritless or frivolous action or tactic, but also of bad faith." (*Levy, supra*, 92 Cal.App.4th at pp. 635–636; compare *Campbell, supra*, 62 Cal.App.4th at p. 574 ["attorneys may have been negligent in their assessment of the viability of [the plaintiff's] claim, but that does not amount to bad faith" pursuit of a frivolous lawsuit], fn. omitted.)

The *Levy* court did not, however, in the published portion of its opinion, go on to discuss application of the subjective standard to the facts of the case. Rather, the court published only its discussion of the threshold question—the propriety of ordering sanctions under section 128.5, rather than section 128.7. (*Levy, supra*, 92 Cal.App.4th at pp. 638–643.)

The court only summarily recited, at the outset of its opinion, that it also concluded the trial court had not abused its discretion in finding the party's and the lawyer's actions sanctionable, and it was therefore affirming the sanctions as to the party,

11

but reversing as to the lawyer for lack of notice sanctions had been sought against him, personally. (*Levy, supra*, 92 Cal.App.4th at p. 628.) Nevertheless, given the recited facts of *Levy*, it is apparent the court concluded sanctions can be imposed on an attorney for taking a position that is " 'wholly incredible and without any merit whatsoever' " or " 'in total disregard' " of patent obligations—i.e., a frivolous position—and taken without " 'honest belief in the propriety or reasonableness' " thereof—i.e., in subjective bad faith—causing the opposing party to incur additional costs. (*Id.* at pp. 633–634.)

The trial court in the instant case cited *In re Marriage of Gumabao* (1984) 150 Cal.App.3d 572 (*Gumabao*) in support of its sanctions order. *Gumabao* is a pre-*San Diegans* case and thus would appear to have continued vitality in the wake of the 2017 amendments to section 128.5.

Like the instant case, *Gumabao* arose from a dissolution proceeding. In that case, counsel for the former husband failed to appear for trial, and despite several calls from his office over the course of the day assuring the court clerk he would appear at specific times, he never appeared. (*Gumabao, supra*, 150 Cal.App.3d at p. 574.) The former wife moved for sanctions. Counsel for the former husband opposed the motion on the ground he had been called out for trial in another case, but the assigned department had been unable to hear the case at the time. He therefore told his client to appear in the dissolution case and tell the court there was only a 50-50 chance his lawyer would be able to appear. (*Id.* at p. 575.) The trial court granted the motion and ordered counsel to pay the former wife the attorney fees she incurred in fruitlessly sitting in court on the scheduled trial date. (*Id.* at pp. 575–576.) The Court of Appeal affirmed. (*Id.* at p. 578.)

The appellate court phrased the issue before it as follows: "[S]ection 128.5 . . . , enacted in 1981, empowers the trial court to award attorney's fees as sanctions against an attorney who is aware of his inability to appear at the time set for trial, has an opportunity to but fails to take appropriate steps to notify opposing counsel of such inability, fails to adequately inform the court of the reasons for his delay in appearance, and fails to appear in court in accordance with his representations." (*Gumabao*, *supra*, 150 Cal.App.3d at pp. 573–574.) The court answered in the affirmative, stating the lawyer's "discourteous

12

act towards opposing counsel was not in good faith, was frivolous and caused unnecessary delay, and serves as ample justification for being held responsible personally for the attorney's fees of the opposing party."[7] (*Id.* at p. 577.)

*Gumabao* has been cited with approval in several cases, including *Wong v. Davidian* (1988) 206 Cal.App.3d 264 (*Wong*) and *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693 (*West Coast*).

In *Wong*, the defendant moved to dismiss the plaintiff's lawsuit after four and one-half years of near stasis. The plaintiff responded with a motion to specially set the case for trial. (*Wong, supra*, 206 Cal.App.3d at pp. 266–267.) The plaintiff's attorney thereafter failed to appear at the scheduled hearing on the motions, as well as at a rescheduled hearing. (*Id.* at 267.) After securing a dismissal, the defendant sought, and was awarded, sanctions. (*Ibid.*) The trial court's order "included 'a finding . . . that the failure of plaintiff's attorney to notify both the Court and defendant's counsel of his failure or the circumstances of his failure, or his plan not to appear at the original hearing . . . , is inexcusable, and was an act in bad faith . . . which caused the defendant to incur attorneys fees for unnecessary legal service. . . .' " (*Id.* at p. 272.)

On appeal, sanctioned counsel challenged the trial court's finding that his failure to appear was " 'inexcusable, and was an act in bad faith.' " He maintained he had been out of the country, but had made arrangements " 'with his client' " to retain substitute counsel. (*Wong, supra*, 206 Cal.App.3d at p. 272.) In fact, counsel had not, himself, arranged for substitute counsel, but apparently had left it to his client to line up another attorney. (*Ibid.*) The appellate court affirmed, pointing out the circumstances were similar to those in *Gumabao*. While counsel in *Wong* had not made an outright

---

[7] The appellate court additionally observed it believed section 128.5 sanctions could be awarded even if the lawyer's "actions were not wilful since the section does not require wilfulness to be an aspect of the actions or tactics." (*Gumabao, supra*, 150 Cal.App.3d at p. 577.) This observation was dicta, and to the extent it suggests section 128.5 sanctions can be ordered in the absence of subjective bad faith, it does not accurately state the law.

13

misrepresentation that "he would appear in court," "his failure to notify opposing counsel he would be out of town, and to personally or otherwise adequately arrange for substitute counsel," caused defense counsel "a needless commute to Riverside County." (*Ibid.*)

In *West Coast*, the trial court found the plaintiff had filed and maintained a meritless lawsuit, which conduct was capped off by his lawyer taking a vacation just prior to the continued trial date, resulting in counsel not seeing a demand letter from the defendant's lawyer stating the defendant would seek sanctions if his attorney had to prepare for and appear at trial. By the time the plaintiff's attorney responded, defense counsel was already in transit from her office in northern California to the court in southern California. (*West Coast, supra*, 2 Cal.App.4th at pp. 699, 701–702.) That same day, the plaintiff's attorney finally talked brass tacks with the plaintiff, with the upshot that the plaintiff dismissed the lawsuit. (*Id.* at p. 702.) The defendant sought, and was awarded, sanctions. (*Id.* at p. 697.) Defense counsel appealed, claiming he had not engaged in "bad faith" actions or tactics. (*Ibid*.)

In assessing the propriety of awarding sanctions, the *West Coast* court first agreed with "the weight of authority"—that section 128.5 "requires a showing not only of a meritless or frivolous action or tactic, but also of a bad faith taking of the action or tactic." (*West Coast, supra*, 2 Cal.App.4th at p. 702.) The court went on to explain, however, that "[a] review of precedent indicates that the bad faith requirement of section 128.5 does not impose a determination of evil motive. The concept of 'harassment' includes vexatious tactics which, although literally authorized by statute or rule, go beyond that which is by any standard appropriate under the circumstances. We appear to be approaching a consensus on the morality of litigation tactics which requires that counsel, even if on technically correct legal ground, not take action which unreasonably or unnecessarily injures the opposing counsel or party." (*Ibid.*; see *Campbell, supra*, 62 Cal.App.4th at p. 574 ["[a]n evil motive is not required; subjective bad faith may be inferred from the prosecution of a frivolous action"]; *Summers, supra*, 225 Cal.App.3d at p. 1072 [bad faith "means simply that the action or tactic is being pursued for an improper motive"]; *Llamas, supra*, 218 Cal.App.3d at p. 1047, fn. 9.)

14

The court also pointed out that "a frivolous action may in itself be evidence from which a finding of subjective bad faith may be made." (*West Coast, supra*, 2 Cal.App.4th at p. 702; accord *Summers, supra*, 225 Cal.App.3d at p. 1073 [that an action or tactic "is totally and completely without merit . . . is certainly evidence that the action is brought in bad faith [citation], because a trial court is entitled to infer from the utter lack of merit that the party knew that it lacked such merit, and yet continued to pursue the action for some ulterior motive"; while a trial court also might "not be willing to draw that inference," that is a matter for the trial court to decide].)

The *West Coast* court went on to cite as illustrative not only *Gumabao*, but several other cases. (*West Coast, supra*, 2 Cal.App.4th at pp. 702–703.) The first of these was *Ellis v. Roshei Corp.* (1983) 143 Cal.App.3d 642. In that case, "the cross-complaint was defective because it miscited a code section. The attorney for cross-complainant offered to amend the pleading. Opposing counsel refused the stipulation, however, electing instead to file a formal demurrer. The trial court sustained the demurrer but then granted sanctions, finding that the offending counsel could have achieved every benefit by the stipulation he later obtained through formal processes. In affirming this action, the appellate court stated: '[W]e note that it is not possible for us to set forth with any degree of exactness all possible situations in which sanctions are appropriate under section 128.5.' (*Id.* at p. 649.)" (*West Coast,* at p. 703.)

The second was *Mungo v. UTA French Airlines* (1985) 166 Cal.App.3d 327, "a case very close in factual context to [*West Coast*]. The appellant in that case had sought a trial continuance, but when it was denied announced that he would be ready for trial on the date set. He knew at that time that opposing counsel would be incurring great expense in bringing witnesses from all around the world for the trial. On the day of trial, appellant's counsel asked for a several-day delay because a key witness from Tahiti could not be reached. When this was denied, he dismissed the case as to the respondents who had brought their witnesses for trial. In affirming sanctions against appellant, the appellate court stated: 'Counsel had the responsibility not to lead the court and opposing counsel to believe that there would be a trial on February 22 knowing that the key witness

15

was not even in the country and had not been contacted even up to the hour of the trial. These facts indicate bad faith.' (*Id*. at p. 333.)" (*West Coast, supra*, 2 Cal.App.3d at p. 703.)

Given this authority, the *West Coast* court concluded the trial court properly awarded sanctions. When the totality of the circumstances was considered, said the court, "one becomes satisfied that [the plaintiff and his lawyer] abused not only opposing party and counsel but the courts as well. They started out with a very marginal lawsuit. . . . After release of the mechanic's lien the substance of the litigation became insubstantial in the extreme. [¶] [Plaintiff and his lawyer] would not or could not recognize this, however. They continued useless and unproductive 'discovery' actions and did not, in our opinion, bargain for disposition of the lawsuit in good faith. We view [their] approach to the date of trial as cavalier, in the extreme. While the case may in fact have been inconsequential, its filing and maintenance in the superior court created consequence. The cap to this inadvised series of events, of course, was requiring opposing counsel to prepare for and travel to San Diego for the trial, when [the plaintiff and his lawyer] either knew or should have known that they would not go to trial." (*West Coast, supra*, 2 Cal.App.4th at p. 704.) This, said the court, constituted "a tactic undertaken for the sole purpose of harassing the opposing party and hence sanctionable under section 128.5." (*Ibid.*) The court reversed the sanctions order solely on the ground it was procedurally deficient and remanded for the court to prepare a "proper" sanctions order. (*Id.* at pp. 704, 706.)

We add to *West Coast's* legal recitation, the case of *Jansen Associates, Inc. v. Codercard, Inc.* (1990) 218 Cal.App.3d 1166. In that case, the plaintiff and his attorney "prepared for and attended the arbitration hearing at considerable time and expense." (*Id.* at p. 1168.) The defendant and its attorney decided not to attend. (*Ibid.*) When the plaintiff received a favorable award, the defendant immediately filed for trial de novo. (*Ibid.*) The plaintiff then sought sanctions under section 128.5 for the defendant's failure to appear at the arbitration, which the trial court ordered against the lawyer, personally. (*Ibid.*) While the Court of Appeal observed the lawyer was not challenging either the

16

propriety of or the amount of sanctions, it went on to state "[t]his is understandable, as his conduct so clearly constitutes bad faith actions or tactics that are frivolous or solely intended to cause unnecessary delay as to be beyond discussion." (*Id.* at p. 1169.) Thus, while the court reversed on the ground the trial court's minute order was insufficient to comply with the procedural requirements of section 128.5, it remanded for the court to enter a formal written order imposing the sanctions. (*Id.* at pp. 1169, 1171; see *Tenderloin Housing Clinic, Inc. v. Sparks* (1992) 8 Cal.App.4th 299, 305–306 [sanctions warranted where "appellant made repeated attempts to take advantage of the absence of respondents' counsel by scheduling depositions, motions, court appearances, etc., at a time when counsel for respondents was on a vacation in England"; " 'attorney has an obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice' " (italics omitted)]; *Luke v. Baldwin-United Corp.* (1985) 167 Cal.App.3d 664, 668–669, 670 (*Luke*) [Citing *Gamabao* as illustrative of cases affirming sanctions where lawyer's "derelictions were blatant" in that "they personally misused the judicial system" and reversing sanctions against attorneys where, in contrast, there was "insufficient evidence [a]ttorneys initiated the motion for an improper motive."].)[8]

We therefore conclude *Gumabao* is not an aberrational decision, but is one of a number of cases decided over the years holding that section 128.5 sanctions can be imposed against a lawyer for unjustifiable dereliction in his or her obligations—i.e., conduct that is "frivolous"—committed with an improper motive, such as to harass or

---

[8] Thus, while the Court of Appeal in *Abbett Electric Corp. v. Sullwold* (1987) 193 Cal.App.3d 708, 712 (*Abbett*), identified *Gamabao* as one of several cases that had "allowed an award without appearing to require a finding of subjective bad faith, sometimes implying that *constructive notice* of impropriety is sufficient ground for an award," *Gamabao* has been more recently cited by cases expressly adhering to the view that conduct must be both frivolous and in subjective bad faith to support sanctions under section 128.5. Moreover, *Abbett* cited *Luke* as illustrative of cases requiring subjective bad faith. (*Abbett,* at p. 712.) Yet *Luke*, as we have recited, cited *Gamabao* with approval. (*Luke, supra*, 167 Cal.App.3d at p. 669.)

17

manipulate opposing counsel or the court—i.e., committed in subjective "bad faith"—and which results in an opponent incurring additional costs. In short, a lawyer whose dereliction in duty is "blatant" and who has "personally misused the judicial system" (*Luke, supra*, 167 Cal.App.3d at p. 669) can be required to pay associated costs needlessly incurred by an opposing party.

We must also assume the Legislature was aware of this constellation of cases as it amended section 128.5. (See *People v. Giordano* (2007) 42 Cal.4th 644, 659 ["Legislature is presumed to be aware of ' "judicial decisions already in existence, and to have enacted or amended a statute in light thereof." ' "].) Indeed, had it viewed these cases as incorrectly applying section 128.5, it could have, and undoubtedly would have, said so and taken corrective action, as it did in promptly reacting to *San Diegans* and further amending the statute.

### *The Sufficiency of the Sanctions Ruling*

Trigger maintains, as she did in her objections to the trial court's proposed statement of decision, that she was sanctioned because of circumstances beyond her control, i.e., that she found herself caught in a trial running longer than anticipated, a circumstance that could befall any lawyer. What Trigger has continually failed to acknowledge, however, is that the trial court did not impose sanctions because Trigger unexpectedly found herself still in trial in another case.

Rather, the court imposed sanctions against Trigger for actions within her control. Trigger affirmatively misrepresented to the court she was ready to proceed on the scheduled trial date and asked to be excused from the pretrial conference, when, in fact, she knew her client in the Sacramento case had unexpectedly decided to testify, knew that the Sacramento trial had not concluded when she had anticipated it would, and knew it was exceedingly unlikely she would be able to appear on the scheduled trial date in the instant case. And even though 10 days remained prior to trial, she thereafter made no attempt to apprise the court of her looming trial conflict and correct what she had previously represented. Not until the afternoon before trial in the instant case did she

18

even tell opposing counsel she was still in trial in Sacramento. And she made no effort to let the trial court know.

In her objections to the court's proposed statement, Trigger claimed she made a motion to continue "at the first available opportunity." But this was another misrepresentation. In fact, far from making a motion to continue at the first opportunity, Trigger did not make a motion to continue until the eleventh hour—after the case was called for trial and her client appeared *sans* counsel but with instructions to tell the court Trigger was in trial elsewhere and to deliver to the court Trigger's belated motion to continue. Trigger did arrange for specially appearing counsel. However, before appearing in court, on short notice, specially appearing counsel did not even have an opportunity to read the moving papers or become conversant with the circumstances. In the meantime, opposing counsel had had to appear and then had to wait while specially appearing counsel read the moving papers and the trial court heard and ruled on the motion.

Trigger also, in her objections to the proposed statement, took great umbrage at opposing counsel's refusal to stipulate to a continuance at the eleventh hour, and she continues to do so on appeal. However, opposing counsel certainly could not assume the trial court would continue the trial, even with a stipulation. Furthermore, given what opposing counsel viewed as Trigger's "nonchalance" towards her trial obligations, and specifically her multiple failures to comply with the pretrial order (which Trigger admitted), counsel considered Trigger's handling of the scheduled trial date as more "bad faith" conduct.

Given the established case law, we have no difficulty concluding Trigger's conduct can support sanctions under section 128.5. Her misrepresentation to the court about her readiness for trial, and her failure to correct that misrepresentation at any point during the 10 days before trial, were, by any measure, unjustifiable derelictions in her obligations to the court, as well as to opposing counsel, and thus constituted "frivolous" conduct. This record is also sufficient to support a finding that Trigger engaged in this misconduct for an improper motive—to manipulate the court and to manipulate and

19

harass the opposing party—and thus acted in subjective bad faith. Indeed, the conduct for which Trigger was sanctioned is not materially different from the attorney conduct sanctioned in the cases cited above.

Unlike in those cases, however, the trial court did not make an *express* finding that Trigger acted in bad faith. The question thus becomes whether this is fatal to affirmance of the sanctions against Trigger.

Section 128.5, subdivision (c) instructs courts on the form and content of sanctions orders as follows: "An order imposing expenses shall be in writing and shall recite in detail the action or tactic or circumstances justifying the order."[9] Thus, a judge's "on-the-record oral recitation of reasons for imposing sanctions is insufficient." (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 996 (*Childs*).)

"But no more is required" in a written order than "a written factual recital, with reasonable specificity, of the circumstances that led the trial court to find the conduct before it sanctionable under the relevant code section." (*Childs*, *supra*, 29 Cal.App.4th at p. 996.) Thus, a written order "should be more informative than a mere recitation of the words of the statute." (*Ibid*.) This ensures "the power conferred by statute will not be abused" and may also "be an invaluable aid to a reviewing court in determining whether the trial court abused its discretion in awarding sanctions." (*Ibid.*)

The trial court recited in detail the factual circumstances leading to its imposition of sanctions, and thus amply satisfied the statutory directive that it "recite in detail the action or tactic or circumstances justifying the order." (§ 128.5, subd. (c).) Was the court also required to make an express finding that Trigger acted in "bad faith?" The case law indicates not, although we hasten to add this would be the better practice.

For example, in *Dolan*, the trial court denied a sanctions motion by defendants who were among many named defendants and who eventually obtained summary

---

[9] Section 128.7 similarly states, "[w]hen imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed." (§ 128.7, subd. (e).)

20

judgment. (*Dolan, supra*, 24 Cal.App.4th at pp. 1502–1503.) The defendants appealed, claiming the plaintiff's claims against them were "totally and completely without merit." (*Id.* at p. 1503.) The Court of Appeal affirmed. (*Id*. at p. 1507.)

The trial court had "summarily" denied the sanctions motion "without comment." (*Dolan, supra*, 24 Cal.App.4th at p. 1504.) "Consequently," said the appellate court, we "must presume the court either found the suit was not totally without merit or was not prosecuted in bad faith or for an improper motive, or any combination of these factors," reciting the long-established appellate maxim that " '[a]ll intendments and presumptions are indulged to support [the order] on matters as to which the record is silent, and error must be affirmatively shown.' " (*Ibid.*, quoting *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

The court then acknowledged that "[w]hen a tactic or action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some ulterior motive." (*Dolan, supra*, 24 Cal.App.4th at p. 1505.) But it also "is within a court's discretion not to draw that inference if convinced the party was acting in the good faith belief the action was meritorious." (*Ibid.*) Thus, said the *Dolan* court, "even assuming [the plaintiff's] action had no merit, *we must presume from the trial court's silence* it found [the plaintiff and his attorney] acted in good faith." (*Id.* at p. 1505, italics added.)

Similarly, in *Summers*, although the record reflected that the trial court found the plaintiff's lawsuit frivolous, the court denied sanctions. The Court of Appeal affirmed, explaining first that the defendant was incorrect in asserting frivolousness necessarily meant the plaintiff had acted in bad faith. The appellate court than pointed out that "[s]ince the trial court made neither express nor implied findings of bad faith, we cannot find that its denial of sanctions is wrong." (*Summers, supra*, 225 Cal.App.3d at p. 1070, fn. omitted.) The court followed this with a note reciting the presumption of correctness attendant to appealed rulings and that "in the absence of contrary findings, 'we must presume in favor of the judgment every finding of fact necessary to support it [that is] warranted by the evidence.' " (*Id*. at pp. 1070–1071, fn. 19.) Thus, the appellate court

21

further noted "were a trial court to expressly find that an action was frivolous, as this one did, and then impose sanctions on the plaintiff, we would interpret the imposition of sanctions as an implied finding that the action was also brought in bad faith."[10] (*Id.* at p. 1071, fn. 19.)

Here, we are presented with the circumstances posited in *Summers*—the granting of a motion for sanctions and a thorough recitation of the conduct for which the sanctions were imposed, and which conduct may, under established case law, be sanctioned. Thus, given no findings to the contrary, we must presume in favor of the trial court's order " 'every finding of fact necessary to support it' " (*Summers*, *supra*, 225 Cal.App.3d at p. 1071, fn. 19)—namely, an implied finding that Trigger acted in bad faith. And as we have already discussed, under established case law, the conduct for which Trigger was sanctioned can support a finding of bad faith.[11]

---

[10] In *Abbett*, the court affirmed the denial of sanctions, concluding the sanctions order could not be "reasonably construed as containing a finding that [the attorney] lacked subjective good faith." (*Abbett, supra*, 193 Cal.App.3d at p. 712.) The trial court had denied sanctions after granting a new trial. (*Id.* at p. 710.) While the appellant claimed opposing counsel had asked improper and highly prejudicial questions on cross-examination "calculated to produce a mistrial," the appellate court pointed out the lower court "made no such finding" and, in fact, had stated it was " 'not too concerned' " with the supposedly objectionable conduct. (*Id.* at p. 712.) Moreover, the trial court appeared to have accepted "the premise" that counsel had "believed in good faith" that his questioning " 'w[as] relevant and warranted.' " (*Id.* at p. 713.) Thus, the trial court's own statements foreclosed "a finding of a wrongful state of mind." (*Ibid.*) "The trial court did not find, and apparently refused to find, that there was any lack of belief or improper purpose behind [the attorney's] conduct." (*Ibid.*) The Court of Appeal further concluded the complained of conduct was not, in any case, "so patently improper that any reasonable attorney would have agreed" it was verboten, and, thus, it was not even objectively improper. (*Id.* at p. 714.) Accordingly, we do not read *Abbett* as requiring, contrary to the cases discussed above, an express finding of good or bad faith. Rather, *Abbett* exemplifies the fundamental appellate principles discussed in those cases—that all intendments are in favor of the trial court's order and that implicit in the denial of a sanctions motions is a finding of no bad faith.

[11] As we have recited, the trial court included its sanctions ruling in its statement of decision issued after trial on the dissolution property issues. The sanctions ruling could, of course, have been issued as a separate order, and we have considerable doubt

22

We cannot say the same as to her client, Taab. He did appear on the scheduled trial date, and did nothing more than relay what Trigger told him and supply the court with Trigger's belated motion for a continuance. There is no evidence Taab was even aware Trigger had misrepresented her readiness for trial or that, in the ensuing 10 days, she made no effort to correct what she had told the court. Nor is there any evidence Taeb knew, as Trigger did, that she could have filed a motion to continue *well* before the scheduled trial date and spared respondent and her attorney the additional costs they incurred as a result of Trigger's conduct.

We reach these conclusions whether we review for abuse of discretion or for substantial evidence. The vast majority of cases state simply that the abuse of discretion standard applies, including *Levy* cited in the 2017 legislative history. (*Levy, supra*, 92 Cal.App.4th at p. 628; see, e.g., *Patel v. Crown Diamonds, Inc.* (2016) 247 Cal.App.4th 29, 37; *Campbell, supra*, 62 Cal.App.4th at pp. 569–570; *Childs*, *supra*, 29 Cal.App.4th at p. 997 ["To justify a reviewing court's interference with a sanction award, the trial court must abuse the broad discretion accorded it by the Legislature."]; *Dolan, supra*, 24 Cal.App.4th at p. 1504.)[12] However, in *West Coast*, the appellate court

_____

the procedural principles pertaining to statements of decision should apply to this ruling, particularly given section 128.5's explicit content requirements. However, even assuming they do, Trigger did not object to the proposed statement of decision on the ground the trial court failed to make an *express finding* she acted in bad faith. Nor, as we have observed, has she raised any such objection on appeal. Rather, she objected to the proposed statement on the grounds no e*vidence* supported the court's sanctions order and that the court made other procedural missteps we address shortly. Accordingly, even under statement of decision principles, the doctrine of implied findings remains fully applicable. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1138; *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 48, 58–62 (*Fladeboe*) [where trial court made no express factual findings on certain points and no objection was made to the proposed statement of decision in this regard, doctrine of implied findings applied on appeal and court was required to infer lower court made every necessary finding and to affirm if such findings were supported by substantial evidence].)

[12] " 'Where the issue on appeal is whether the trial court has abused its discretion, the showing necessary to reverse the trial court is insufficient if it presents facts which

stated the trial court's "implied" findings would be reviewed for substantial evidence, and that is the standard articulated in other cases involving implied findings. (*West Coast, supra*, 2 Cal.App.4th at p. 698; see also *People v. Landers* (2019) 31 Cal.App.5th 288, 303–304 [in reviewing sanctions under section 177.5, "an abuse of discretion will be found if the findings underlying the order under review are factually unsupported"; accordingly, court must " 'assess[] the record for substantial evidence to support the court's express or implied findings' ' ']; *Fladeboe, supra*, 150 Cal.App.4th at p. 48.)

***The Sanctions Order Was Procedurally Proper***

Finally, Trigger advances a number of procedural objections to the sanctions order. She claims "no reasonable notice and opportunity to be heard" was provided to Trigger and her client; there is "no finding that due diligence had been exercised"; "the motion was not separately made"; "no safe harbor period was provided"; and "no order to show cause was issued." (Some capitalization omitted.) These complaints are wholly without merit.

The record on appeal, supplied by Trigger, includes respondent's separate motion for sanctions under section 128.5. (Trigger was also on notice, through her specially appearing counsel, that at the first trial call, at which Trigger failed to appear, respondent had been given leave to file a sanctions motion.) Moreover, at the close of evidence in the rescheduled trial, Trigger acknowledged on the record that she had notice of respondent's motion for attorney fees and sanctions. Trigger, herself, then raised the issue of how her opposition should be presented and *agreed* with the court's suggestion she do so in her closing trial brief. In fact, Trigger not only agreed with this procedure, but told the court "[t]hat's what I was going to ask," explaining she "would ask to do that

---

merely afford an opportunity for a different opinion: "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge. To be entitled to relief on appeal from the result of an alleged abuse of discretion it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice. . . ." ' " (*Dolan, supra*, 24 Cal.App.4th at p. 1504, italics omitted.)

for efficiency so that [they] are not returning again for another court date." Finally, in her objections to the court's proposed statement of decision, and specifically in the course of complaining that opposing counsel had not stipulated to a continuance of the trial, Trigger acknowledged that respondent had filed a "new motion" seeking attorney fees "including from Ms. Trigger personally in the form of sanctions."

In short, Trigger waived nearly all of her procedural objections in connection with the court's handling of the sanctions motion. (See *People v. Leonard* (2014) 228 Cal.App.4th 465, 481 [" ' " '[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court. . . .' " ' "].)

As for her remaining procedural claims, since sanctions were imposed pursuant to motion, the court was not required to issue an order to show cause. (§ 128.5, subd. (f)(2)(B).) And given the nature of the conduct on which the sanctions were based— Trigger's misrepresentation to the court that she was ready to proceed to trial, when she was, in fact, not ready, her failure to ever correct the court's misapprehension as to her readiness, and her delay in seeking a continuance until after the case was called for trial—the "safe harbor" provisions are not applicable. Rather, these provisions allow time for the withdrawal of frivolous pleadings. (§ 128.5, subd. (f)(1)(B), (D).)

## DISPOSITION

The order imposing sanctions pursuant to section 128.5 is reversed as to Taeb and affirmed as to Trigger. Each party to bear their own costs on appeal.

25

_____

Banke, J.

We concur:


_____

Humes, P. J.


_____

Margulies, J.

A152178, *Taeb v. Taeb*

26

Trial Court:   Alameda County Superior Court

Trial Judge:   Hon. Alice Vilardi

Counsel:

Whipple, Mercado & Associates, LLP, Mary C. Whipple for Respondent.

Trigger Law office, Michelle Elizabeth Trigger for Appellant.